IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 02-00438 |
| | ) |
| Plaintiff, | ) DECLARATION OF COREY Y. S. |
| | ) PARK; EXHIBIT "A" |
| vs. | ) |
| | ) |
| AARON A. RUTLEDGE, ANTHONY | ) |
| A. RUTLEDGE, SR., a/k/a/ "TONY" | ) |
| RUTLEDGE, STAR-BEACHBOYS, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF COREY Y.S. PARK

COREY Y.S. PARK, hereby declares and says that:

1. I am an attorney licensed to practice law in the State of Hawai`i and to appear before this Court. I am with the lawfirm Paul, Johnson, Park and Niles, Attorneys at Law, A Law Corporation, and am one of the attorneys for the Association of Apartment Owners of Hanohano Hale, a condominium project located in Punalu'u, on the Island of Oahu ("Hanohano Hale"). I make this Declaration based upon my personal knowledge, as well as my review and familiarity with the record in the two state court proceedings referred to below.

2. The Hanohano Hale condominium project and the Pat's at Punalu'u condominium project are located on adjacent parcels of land under long

term leases from Hanohano Enterprises, Inc. ("HEI"), and Sarai Vahey ("Vahey"). In 1997 and 1998, HEI and Vahey conveyed their interests in these parcels, along with their interests in four other parcels they owned, which are located *mauka* of the condominium projects, to Unity House by way of warranty deeds. In turn, Unity House granted to HEI, Vahey and the Hanohano Family Incorporated ("HFI") an unrecorded option to purchase the properties back from Unity House. Unity House paid HEI, HFI, and Vahey a total of $3,744,406.00 in connection with the warranty deeds and the option agreement.

        3.       In 1999, Hanohano Hale filed a lawsuit against HEI, Vahey and Unity House contending that the conveyance of the property underlying the Hanohano Hale condominium project to Unity House constituted a sale under Chapter 514C, Hawaii Revised Statutes, thereby giving Hanohano Hale a statutory right of first refusal to purchase the interest conveyed to Unity House (Civil No. 99-1122-03, First Circuit Court of the State of Hawaii, hereinafter "Association Lawsuit"). In January 2000, the Association of Apartment Owners of Pat's at Punalu'u ("Pat's") was permitted to intervene as a Plaintiff in the Hanohano Hale action in order to make the same claim with respect to its parcel.

        4.       On July 2, 1999, Unity House filed a lawsuit against HEI, HFI and Vahey contending that the warranty deeds of the various parcels, including the Hanohano Hale and Pat's parcels, were not the result of a sale of the properties but,

2

instead, in the nature of a note and mortgage arrangement to secure the repayment of the monies that Unity House had paid to HEI, HFI and Vahey for the parcels (Civil No. 99-2545-07, First Circuit Court of the State of Hawaii, hereinafter "Foreclosure Lawsuit"). The Association Lawsuit and the Foreclosure Lawsuit were consolidated by Order dated November 16, 1999 (hereinafter, "Consolidated Lawsuits").

      5.    Subsequently, by order entered on December 21, 2004, pursuant to cross-motions for summary judgment argued in 2001, the state court held that the above-described conveyances of the Hanohano Hale and Pat's parcels were not sales of the properties subject to Chapter 514C, Hawaii Revised Statues, but were in the nature of a note and mortgage to secure a loan made by Unity House.

      6.    After a bench trial held in 2004, on February 7, 2005, the state court entered its Findings of Fact and Conclusions of Law and Order determining the redemption price for the properties to be $10,500,000, less $241,305.88 in allowed adjustments, which were necessitated by the associations continued payment of lease rents to Unity House, or a net redemption price of $10,258,694.12. As discussed below, the redemption amount was subject to further adjustments since the associations continued to pay lease rents to Unity House following the effective date of the court's determination.

3

7. Thereafter, since HEI, HFI and Vahey did not have the funds to redeem the properties, they and the associations entered into a November 22, 2005, settlement agreement whereby the associations agreed to provide the funds for the redemption of all of the properties, plus pay additional amounts to HEI, HFI and Vahey. In exchange, HEI, HFI and Vahey agreed that the associations would receive the leased fee interests underlying their respective condominium projects, and further agreed to assign their rights to appeal the rulings of the state court, including with respect to redemption amount.

8. Thereafter, the associations entered into a settlement agreement with Unity House, a true and correct copy of which is attached hereto as Exhibit "A". Under this settlement, the parties have agreed that the redemption of the property would occur outside of the state foreclosure proceeding and at a reduction in the redemption amount that was set by the state court.

9. The redemption amount set by the state court was subject to further adjustments since the associations continued to pay lease rents of approximately $45,800 per month to Unity House following the effective date of the redemption amount as initially determined by the state court. Based on Unity House's July 31, 2005, accounting and on the additional lease rents that have been paid and estimates of Unity House's expenses, the actual redemption amount as of November 30, 2005, should be approximately $9,770,000.

10. Under the settlement with Unity House, the parties have agreed that the associations would pay Unity House $9,026,694, rather than the adjusted estimated redemption amount of $9,770,000, a reduction of approximately $743,000. Such a reduction is wholly appropriate in order for Unity House to avoid the appeal that the associations would otherwise take. That appeal, which the associations believe they have a substantial likelihood of prevailing on, would raise a number of issues, including a challenge to the state court's calculation of the redemption amount and the adjustments. For instance, the associations believe that the state court erred in permitting Unity House to claim its interest expenses as a legitimate cost in connection with the underlying loan. In order to make the loan to HEI, HFI and Vahey, Unity House apparently had to draw on its line of credit with the Bank of Hawai`i, and it claimed that the approximately $1,192,000 in interest that it paid to the bank was a legitimate expense of the loan to HEI, HFI and Vahey, which the state court permitted. However, it is well settled that a party, such as a mortgagee in possession, may properly claim as expenses only those that are directly associated with the care and management of the property. E.g. Campbell v. Ohio National Life Insurance Co., 161 Neb. 653, 678-679, 74 N.W.2d 546, 561-562 (1956); Murray v. Wiley et al., 180 Or. 257, 265, 176 P.2d 243, 247 (1947); and Mckenerick v. Leven et al., 305 Ill.App. 532, 21 N.E.2d 536, 538 (1940). Here, since Unity House's interest payments had nothing to do with the

repair and maintenance of the properties, but amounted to a double recovery, it was not a proper expense and the state court should not have permitted it.

Similarly, the state court's allowance of Unity House's attorneys' fees, which as of July 31, 2005, amounted to approximately $665,000, was error since it had nothing to do with the maintenance of the property and there was no statutory or contractual provision permitting such an award.

Thus, the associations believe that they have very strong arguments for setting aside at least $1,850,000 in expenses allowed by the state court for the benefit of Unity House, which would reduce the redemption price by that same amount.

11.    Although the Associations believe that they have a strong likelihood of prevailing on appeal and obtaining a potentially significant reduction in the redemption amount, the members of the associations are extremely anxious to acquire the leased fee interests and thereby own their apartments in fee simple. In addition, the associations understand the uncertainties involved in an appeal and do not want to incur the risks and delays of that process. The associations are thus willing to forego their appeal rights if the settlement that they have negotiated with Unity House can be effectuated.

12.    Hanohano Hale has taken the steps necessary to purchase its leased fee interest (as I understand Pat's has also done). For instance, Hanohano

Hale has adopted the amendments to its governance documents required under state law for it to purchase its leased fee interest. It has also obtained a loan commitment from the Bank of Hawai`i to finance the acquisition, and is presently in the process of satisfying the Bank's conditions under the loan commitment. Hanohano Hale is doing all that it can to effectuate a closing of the acquisition of its leased fee interest.

      I, COREY Y.S. PARK, do declare under penalty of law that the foregoing is true and correct to the best of my knowledge.

      DATED: Honolulu, Hawai`i, February 8, 2006.

*[signature]*
COREY Y.S. PARK