## SETTLEMENT AGREEMENT

This Settlement Agreement is made this 31st day of January 2006, by and between Unity House, Incorporated ("Unity House"), on the one hand, and, on the other hand, the Association of Apartment Owners of Pat's at Punaluu, Inc. ("Pat's"), and the Association of Apartment Owners of Hanohano Hale ("Hanohano Hale") (Pat's and Hanohano Hale are sometimes collectively referred to as "Associations"). (The parties hereto are sometimes individually referred to as "Party" and collectively as "Parties".)

WHEREAS, Hanohano Enterprises, Incorporated ("HEI") and Sarai Ann Kalai Hanohano Vahey ("Vahey") owned, as tenants in common, the following parcels of land: Tax Map Key Nos.: (1) 5-3-8: 01 ("Parcel 1"), 02 ("Parcel 2"), and Tax Map Key Nos.: (1) 5-3-9: 23 ("Parcel 23"), 24 ("Parcel 24"), and 58 ("Parcel 58"); and The Hanohano Family, Inc. ("HFI") and Vahey owned, as tenants in common, Tax Map Key No.: (1) 5-3-9: 22 (Parcel 22"). (Hereinafter, all of the foregoing parcels are sometimes collectively referred to as the "Subject Properties"; Parcel 22, Parcel 23, Parcel 24, and Parcel 58 are sometimes referred to as the "Mauka Properties"; and Parcel 1 and Parcel 2 are sometimes referred to as the "Makai Properties".) All of said parcels are described in Exhibit A attached hereto.

WHEREAS, in 1997 and 1998, HEI and Vahey, through a series of warranty deeds, conveyed their interests in the Subject Properties to Unity House, subject to the existing leases and other encumbrances of record, such that Unity House now holds title to Parcels 1, 2, 23, 24, and 58; and Unity House and HFI, as tenants in common, now hold title to Parcel 22, all subject to the leases and encumbrances of record.

Settle Agmt Unity House 01 30 06.doc

**EXHIBIT A**

WHEREAS, through certain unrecorded option agreements made in connection with the above referenced warranty deeds, Unity House granted HEI, HFI and Vahey the option to purchase the Subject Properties on the terms contained therein.

WHEREAS, Unity House paid the total sum of $3,744,406.00 in connection with the warranty deeds and the option agreements.

WHEREAS, HEI, HFI and Vahey failed to exercise their option to purchase the Subject Properties according to the terms thereof.

WHEREAS, on March 18, 1999, Hanohano Hale filed a lawsuit against HEI, Vahey and Unity House (Civil No. 99-1122-03, First Circuit Court of the State of Hawaii, hereinafter "Association Lawsuit"), contending that the conveyance of the Makai Properties to Unity House constituted a sale under Chapter 514C, Hawaii Revised Statutes, thereby giving Hanohano Hale a statutory right of first refusal to purchase the interest conveyed to Unity House; on January 4, 2000, Pat's was permitted to intervene as a Plaintiff to make the same claim with respect to the portion of the Makai Properties underlying its condominium project; and

WHEREAS Unity House denied the material allegations of the Association Lawsuit.

WHEREAS, on July 2, 1999, Unity House filed a lawsuit against HEI, HFI and Vahey contending that the warranty deeds of the Subject Properties were not the result of a sale of the Subject Properties but, instead, in the nature of a note and mortgage arrangement to secure the repayment of the $3,744,406.00 which Unity House alleged was a loan, and upon which Unity House sought to foreclose (Civil

No. 99-2545-07, First Circuit Court of the State of Hawaii, hereinafter "Foreclosure Lawsuit").

WHEREAS, the Association Lawsuit and the Foreclosure Lawsuit were consolidated by Order dated November 16, 1999 (hereinafter, "Consolidated Lawsuits").

WHEREAS, on December 21, 2004, pursuant to cross-motions for summary judgment argued and ruled on in 2001, the Circuit Court entered an order holding as a matter of law that the above-described transaction was not a sale of the Makai Properties subject to Chapter 514C, Hawaii Revised Statues, but was in the nature of a note and mortgage to secure a loan made by Unity House.

WHEREAS, on February 7, 2005, the Circuit Court, following a bench trial, entered its Findings of Fact and Conclusions of Law and Order ("Findings of Fact/Conclusions of Law") in the Foreclosure Lawsuit. The only issues then before the Court were the amount of the redemption price and the deadline by which HEI, HFI and Vahey were required to pay it. The Court determined that the redemption price was $10,500,000, less $241,305.88 in allowed adjustments, or a net redemption price of $10,258,694.12, and noted that the deadline for the payment of the redemption price would be determined by the Court at a later date.

WHEREAS, HEI, HFI and Vahey, on the one hand, and the Associations, on the other, have entered into a separate Settlement Agreement, effective as of November 22, 2005, whereby the Associations have agreed to provide to HEI, HFI and/or Vahey, as may be appropriate, the funds required to redeem the Subject Properties, plus certain additional funds, in consideration for the conveyance to the Associations of their respective leased fee interests in the Makai Properties, as provided for therein ("HEI/Association Settlement Agreement").

3

WHEREAS, the Parties have agreed to enter into this SETTLEMENT AGREEMENT, settling and resolving all disputes with Unity House including but not limited to agreement with respect to the redemption price and to cooperate and work with each other and use their best efforts such that HEI, HFI, and/or Vahey, as may be appropriate, obtain title to the Mauka Properties and the Associations obtain title to their respective interests in the Makai Properties.

THEREFORE, the Parties hereto agree as follows:

1. **Reduction in redemption amount:** The full and final amount to be paid to Unity House for the redemption of the Subject Properties shall be $9,026,694 ("Redemption Amount"). No further adjustments, such as may have been allowable under the Findings of Fact/Conclusions of Law, shall be made to the Redemption Amount, provided that any amounts paid by the Associations to Unity House in lease rents between December 1, 2005, and the date of closing, less all Real Property Taxes paid by Unity House on the Subject Properties, both prorated as of the day of closing, shall be credited to the above Redemption Amount.

2. **Conveyance of Subject Properties:** The Parties agree that the closings of the conveyances contemplated hereunder and under the HEI/Association Settlement Agreement and any disbursements of funds shall be handled by Title Guaranty Escrow Services, Inc.

Unity House shall convey title and all of its interests in the Mauka Properties to HEI, HFI and/or Vahey, or to their respective designees, in such proportion and interest as they all agree, by limited warranty deeds and any other conveyance instrument sufficient to convey title, free and clear of any liens and encumbrances except those set forth in Exhibit "A". In the event that HEI, HFI and Vahey do not agree

4

on the conveyance(s) to be made hereunder, then Unity House shall convey all of its interests in the Mauka Properties to HEI, HFI and/or Vahey, as tenants in common, in such proportion as previously held by them immediately prior to the conveyance of the particular parcel to Unity House described above.

Unity House shall convey title and all of its interests in the Makai Properties to the respective Association by limited warranty deeds, assignments of lessors' interests under any leases, including master leases, and any other conveyance instrument sufficient to convey title to the respective Association, free and clear of any liens and encumbrances except those set forth in Exhibit "A", provided that nothing contained herein shall be construed as requiring Unity House to convey any interest it has as a sublessee under any apartment subleases.

The conveyances provided for herein shall be made by way of a Limited Warranty Deed in the general form attached hereto as Exhibit "C".

The Parties further agree to cooperate with each other, and with HEI, HFI and Vahey, as may reasonably be required, to accomplish the conveyances and perform the obligations contemplated herein and in the HEI/Association Settlement Agreement, including, but not limited to, in the execution of such further documents and the filing of such motions as may reasonably be required.

3.  **Closing Date:** The Closing Date shall be on or before 30 days following the entry of the order approving this Agreement, as described in paragraph 7, below, provided that the Parties shall cooperate in good faith in closing the transactions contemplated by this agreement as expeditiously within the 30 day period as possible.

4.  **Closing costs:** The Associations shall pay all costs of closing, including without limitation all escrow fees, standard coverage title insurance fees,

5

conveyance taxes, the drafting fees for conveyance documents, recording fees, and the like, and shall be responsible for any costs for the issuance of extended title coverage and any endorsements, and the costs of financing and obtaining financing.

5. **Other costs:** The Parties shall each bear all of their own attorney fees and costs that have been incurred, including due diligence costs, attorneys' fees and other related costs (except for any drafting fees and costs described in paragraph 4 of this Agreement), provided that if the closing does not occur on or before the Closing Date specified above, Unity House may continue with its Foreclosure Lawsuit and may recover its attorney fees and costs.

6. **Dismissals of all lawsuits:** The Parties agree that stipulations for the dismissal with prejudice of the Association Lawsuit and the Counterclaim filed in the Foreclosure Lawsuit, shall be filed upon the entry of the order approving this Agreement, as described in paragraph 7, below, or as soon as practicable thereafter. The Parties agree that a stipulation for the dismissal with prejudice of the Foreclosure Lawsuit shall be filed upon closing of the transactions through escrow as described in this Agreement.

7. **Agreement contingent upon Unity House obtaining required approvals:** The Parties acknowledge that Unity House is required to obtain the approval of the United States District Court of this Agreement before the terms of this Agreement are binding on it. The Parties therefore agree that this Agreement and all of the rights and obligations created herein, including all releases and indemnities contained in the Release Agreement entered into herewith, are contingent upon Unity House obtaining the approval of the United States District Court. Unity House shall promptly seek court approval, and take all other steps necessary, to obtain the approval

of the United States District Court. The Parties hereby agree to cooperate with each other in seeking and obtaining such approval as expeditiously as possible.

In the event that the order of the United States District Court approving this Agreement is not entered within 60 days from the date of the hearing on the motion for approval (which 60 day period may be extended only by the mutual agreement of the Parties), this Agreement shall become void.

8. **Releases:** In consideration for the promises herein and in connection therewith, Pat's and Hanohano Hale hereby agree to sign, simultaneously with the signing of this Agreement, the Release Agreement attached hereto as Exhibit "B". Pat's and Hanohano Hale further agree to use their best efforts to obtain the agreement of HEI, HFI and Vahey to the Release Agreement; in the event that any one of them should refuse to agree to the Release Agreement, then this Agreement shall be void.

9. **Assignment by Unity House to Pat's of claims for any past due lease rents:** Unity House hereby agrees to assign, and does by this Agreement, effective only upon closing, assign, to Pat's any and all claims for unpaid rents under any leases, subleases, and the like, on the Pat's portion of the Makai Properties, which are or were due, and which remain unpaid at the time of closing, and will provide to Pat's such records and files as it has in connection with any such rents; provided, however, that in the event that the lease rent payments from lessees or sublesses at Pat's are less than 95% of the amount which Unity House has been receiving in the twelve months preceding the signing of this Agreement, then Pat's shall pay to Unity House the proceeds from any collection of said unpaid rents until such time as Unity House has received lease rent payments for the period between the signing of this

Agreement and the closing contemplated hereunder in an amount which is 95% of the amount which Unity House received in the twelve months preceding the signing of this Agreement. For example, and using hypothetical rather than actual figures, if in the twelve months preceding this Agreement Unity House received lease rent payments at a rate of $5,000.00 per month from lessees or sublessees at Pat's, but in the two months between the signing of this Agreement and the closing receives only $8,000.00 in lease rent payments for lessees or sublessees at Pat's, then the first $2,000.00 which Pat's collects on the claims for unpaid rents which were assigned to it from Unity House shall be paid by Pat's to Unity House.

10. **No assignment:** The Parties represent and warrant that they have not entered into any agreements giving any third party rights to the Subject Properties or assigned any claims, interests, or the like which would prevent or otherwise hinder them from entering into this Agreement and consummating the transactions contemplated herein. The Parties further agree that they will not assign or transfer any interest in this Agreement or in the Subject Properties, in whole or in part, or by operation of law, to any other person or entity without the prior written consent of the remaining Parties.

11. **Organization and authority:** The Parties represent and warrant to each other that they are duly organized, validly existing and in good standing under the laws of the State of Hawaii, and that they have all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereunder.

12. **No liens, encumbrances or other agreements.** The Parties shall not place any further liens or encumbrances on the Subject Properties or enter into any

agreements affecting the Subject Properties, except as may be contemplated by this Agreement, without the prior written consent of the remaining Parties.

13.  **Entire Agreement:**  This Agreement contains the entire agreement among the Parties with respect to the matters set forth herein. It is binding upon and shall inure to the benefit of the successors and assigns of each of them. This Agreement can only be modified by a writing signed by all of the Parties.

14.  **No party deemed drafter:**  The terms of this Agreement have been negotiated at arm's length by and between the Parties, through experienced counsel, and no Party shall be deemed to be the drafter of this Agreement. The Parties agree that in the event that this Agreement is ever construed by an arbitrator or a court of law, such arbitrator or court shall not construe this Agreement or any provision of this Agreement against any Party as the drafter of this Agreement.

15.  **Headings:**  The headings of the paragraphs of the Agreement are inserted for convenience only and do not affect the meaning of this Agreement.

16.  **Counterparts:**  This Agreement may be executed in one or more counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts together shall constitute one and the same instrument. For all purposes, including without limitation recordation, filing and delivery of this instrument, duplicate, unexecuted, and unacknowledged pages of the counterparts may be discarded and the remaining pages assembled as one document.

17.  **Facsimile signatures:**  The signature page bearing the signature of a Party or a duly authorized representative that is transmitted by facsimile shall be satisfactory to bind such Party to this Agreement. Any Party that transmits a signature page by facsimile shall deliver to the other Parties the original signature page within

seven days following execution thereof, although the failure to make such delivery shall not affect the obligations of such signatory.

18. **Settlement to be placed on the record:** The Parties agree to cooperate in putting this settlement on the record in the Consolidated Lawsuits.

19. **Compromise and Settlement:** It is specifically understood and agreed among the Parties that the within settlement is strictly a compromise of disputed claims and are not, and are in no way to be considered or construed as, an admission of any liability or responsibility whatsoever on the part of any Party.

IN WITNESS WHEREOF the undersigned parties have executed this Agreement effective as of the date first appearing herein.

AGREED:

UNITY HOUSE, INCORPORATED

By _____ For EG&G Service
Its Court Appointed Custodian/Receiver
Dated: 1/30/06

| ASSOCIATION OF APARTMENT OWNERS OF PAT'S AT PUNALUU, INC. | ASSOCIATION OF APARTMENT OWNERS OF HANOHANO HALE |
|---|---|
| By _____<br>Its _____<br>Dated: | By *[signature]*<br>Its President<br>Dated: January 31, 2006 |

APPROVED AS TO FORM:

_____
Howard Glickstein
Attorney for Unity House, Incorporated
Dated:

_____
John D. Marshall
Attorney for Association of Apartment
Owners of Pat's at Punalu'u, Inc.
Dated:

*[signature]*
_____
Corey Y.S. Park
Attorney for Association of Apartment Owners
of Hanohano Hale
Dated:

11

ASSOCIATION OF APARTMENT　　　　ASSOCIATION OF APARTMENT
OWNERS OF PAT'S AT PUNALUU, INC.　　OWNERS OF HANOHANO HALE


By _____　　By _Alfred H Walker_
Its　　　　　　　　　　　　　　　　　　Its _President_
Dated:　　　　　　　　　　　　　　　　Dated: _January 31, 2006_


APPROVED AS TO FORM:

_[signature]_
Howard Glickstein
Attorney for Unity House, Incorporated
Dated:

_____
John D. Marshall
Attorney for Association of Apartment
Owners of Pat's at Punalu'u, Inc.
Dated:


_[signature]_
Corey Y.S. Park
Attorney for Association of Apartment Owners
of Hanohano Hale
Dated:

11

| ASSOCIATION OF APARTMENT OWNERS OF PAT'S AT PUNALUU, INC. | ASSOCIATION OF APARTMENT OWNERS OF HANOHANO HALE |
|---|---|
| By *[signature: Richard W. Krake]* <br> Its *President* <br> Dated: 1-31-2006 | By _____ <br> Its _____ <br> Dated: |

APPROVED AS TO FORM:

_____
Howard Glickstein
Attorney for Unity House, Incorporated
Dated:

*[signature]*
_____
John D. Marshall
Attorney for Association of Apartment
Owners of Pat's at Punalu'u, Inc.
Dated:

_____
Corey Y.S. Park
Attorney for Association of Apartment Owners
of Hanohano Hale
Dated:

11