UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON A. RUTLEDGE, ANTHONY A. RUTLEDGE, SR., a/k/a "TONY" RUTLEDGE, STAR-BEACHBOYS, INC.,<br><br>Defendants. | Criminal No. 02-00438 DAE<br><br>**FINAL REPORT OF THE RECEIVER; EXHIBITS A-D** |

## FINAL REPORT OF THE RECEIVER

Pursuant to this Court's order of April 13, 2006, EG&G Technical Services, Inc., and its agent, Anthony Pounders, (the "Receiver") submits this Final Report to update the Court and relevant persons regarding certain of the Receiver's activities. This report is intended to supplement the Receiver's prior reports of January 11, 2005, and October 21, 2005. The Receiver submits this report in anticipation of its imminent discharge from this case. The Receiver has not requested a hearing in conjunction with this Report but will attend any hearing that the Court deems necessary or is noticed by others.

## BACKGROUND

This criminal case involved allegations that defendants engaged in tax evasion and committed mail and wire fraud in the course of a scheme to gain control over a Hawaii non-profit labor benefits corporation known as Unity House, Inc. ("Unity House"), and its substantial assets. In its Third Superseding Indictment (the "Indictment"), issued on December 2, 2004, the Grand Jury found

that specified assets of the defendants Anthony Rutledge, Sr. and Aaron Rutledge (collectively, the "Rutledge defendants") were subject to criminal forfeiture pursuant to 21 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C) in the event of a conviction. Indictment at 62-63. Among these assets were the assets of Unity House, Inc.

On December 10, 2004, Senior United States District Judge Samuel P. King issued an ex parte, post-indictment restraining order (the "Restraining Order"), which permitted the United States to seize the potentially forfeitable assets and take control over Unity House. Consistent with the terms of the Restraining Order, the Receiver was appointed by the court and, since December 2004, has been overseeing the operations of Unity House by and through its employee, Anthony Pounders.[1]  The terms of the Restraining Order were continued by a preliminary injunction issued by Judge David Alan Ezra in early January, 2005. *See* Docket # 302, 313. On January 14, 2005, Anthony Rutledge, Sr. filed an interlocutory appeal to the United States Court of Appeals for the Ninth Circuit, claiming that the Restraining Order and subsequent preliminary injunction were invalid.

In early February, 2006, the Rutledge defendants and Star-Beachboys, Inc., *i.e.*, all three criminal defendants, pleaded guilty to certain crimes alleged in the Indictment; the remaining charges were dismissed. The Court accepted defendants' plea agreements on February 6, 2006, and sentenced the defendants in accordance therewith. Docket # 472-77. Conditions of these pleas included restrictions on the Rutledge defendants' future involvement with Unity House.

---

[1]  Although the Restraining Order does not expressly use the term "receiver" or "receivership," the parties and the Court have used that term as a matter of convenience.

The pleas also provided for the establishment of a reconstituted Unity House Board of Directors. Specifically, Anthony Rutledge, Sr.'s plea agreement named nine individuals who would serve as members of the Board, and provided the Court with a list of five additional individuals, from which the Court chose the remaining two Board members. Although a reconstituted Board was established pursuant to the plea agreement, not all of Unity House's operations were immediately transferred to the Board. By Court order, the Receiver retained temporary authority to oversee and conclude, where possible, certain specified items of Unity House business with respect to which the Receiver's continued involvement was deemed in the organization's best interest. Docket # 473. For example, some of these matters involved property transactions that would have been disrupted by an immediate change in Unity House authority.

On February 14, 2006, after the criminal proceedings had been effectively terminated by Court's acceptance of the plea agreements, the Ninth Circuit issued an opinion finding that Unity House's assets were not properly the subject of criminal forfeiture because they were not "proceeds" that were "obtained" by Anthony Rutledge, Sr., as a result of his alleged crimes. *United States v. Rutledge*, 437 F.3d 917 (9th Cir. 2006). This decision would have effectively undermined the factual and legal basis for the receivership, which was premised on the Indictment's finding that Unity House's assets were indeed "proceeds" "obtained" through the alleged crimes. However, on May 11, 2006, prior to the issuance of its mandate, the Ninth Circuit withdrew its prior opinion on the ground that the plea agreements had rendered the appeal moot:

> The opinion reported at 437 F.3d 917 is withdrawn and the appeal is dismissed as moot. Because the mootness was the result of a settlement between the parties, we do not order vacatur of the district court's order [establishing the receivership]. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994).

3

*United States v. Rutledge*, ___ F.3d ___, No. 05-10060, slip op. at 5296 (9th Cir. May 11, 2006). Thus, the Ninth Circuit proceedings had no ultimate impact on the validity of the receivership.

Nevertheless, on March 14, 2006 (Docket #485), the Court granted the Receiver authority independent of the forfeiture proceedings to wind up certain enumerated transactions, to wit:

   a.   *Association of Apartment Owners of Hanohano Hale & Association of Apartment Owners of Pat's at Punaluu v. Unity House, et al.*, Civil No. 99-1122-03 (BIA), First Circuit Court, State of Hawaii, including related settlement implementation;

   b.   *Douglas Himmelfarb v. Unity House, Inc., et al.,* Civil No. 05-1-1386-07 (VSM), First Circuit Court, State of Hawaii, including related on-going settlement implementation;

   c.   Negotiations regarding the Radisson Kauai Development (Brian and Joan Anderson), including related on-going settlement implementation;

   d.   *Unity House, Inc. v. Tam*, Civil No. 05-1-2218-12 (BIA), First Circuit Court, State of Hawaii;

   e.   *Unity House, Inc. v. Heavenly Road Productions, Inc., et al.*, Civil No. 98-0-5043, First Circuit Court, State of Hawaii;

   f.   *Unity House, Inc. v. Chabad Lubavitch of Hawaii, Inc., et al.*, Civil No. 05-1-1399-08 (RKOL), First Circuit Court, State of Hawaii;

   g.   *Ilae, et al. v. EG&G Technical Services, Inc., et al.*, No. CV05-00794 (DAE) (LEK), United States District Court for the District of Hawaii;

   h.   *Hawaii Pacific Cinema Development Foundation, et al. v. Beacon Edge Pictures LLC, et al.*, Civil No. CV04-00510 (ACK) (KSC), United States District Court for the District of Hawaii;

4

i.      Drafting and filing of this Final Report.

The Receiver has been working cooperatively with the reconstituted Board to finalize these transactions.[2]  In each case, the Receiver and its counsel either played a direct role in conducting or resolving the matter or supervised and directed attorneys retained for a particular matter.  As set forth below, the Receiver has concluded or substantially concluded those of the above-mentioned transactions for which the Receiver's continued involvement was necessary, as ordered by the Court.  All of the remaining items are now at a stage where the Board of Directors may assume control without compromising the interests of the organization.

The purpose of this Report is to describe the status of the matters entrusted to the Receiver in anticipation of being discharged from this case and relieved of all future duties with respect to Unity House.  The Receiver submitted a comprehensive report on its activities on October 21, 2005.  A copy of that report is attached hereto as Exhibit A.  To ensure brevity and reduced cost, and at the Court's request, this Report is less comprehensive than the October report.  Part One provides a general overview of Unity House's current financial condition and summarizes the changes to Unity House's finances during the course of the receivership.  Part Two reports on the current status of the specific matters, set forth above, over which the Receiver has retained primary authority since the

_____

[2] The reconstituted Board has been paying the Receiver's attorneys' fees but has noted that they have been paid "subject to audit."  The Receiver is uncertain what this means and whether the Board may later seek the return of fees paid to the Receiver's counsel for work performed on behalf of the organization. For this and other reasons, the Receiver anticipates seeking a discharge order that would have the Court retain jurisdiction to resolve any such ancillary future disputes related to the receivership in this case.

return of the Board of Directors. Part Three briefly updates the Court on some of the most significant matters discussed in the October, 2005, report.

Pursuant to the Receiver's agreement with counsel for the Unity House reconstituted Board of Directors, and with the approval of the Court, this Report intentionally omits detailed discussion of the current status of Unity House beneficiary programs and activities.

## DISCUSSION

**I.  PART ONE:**

**UNITY HOUSE FINANCES**

When the Receiver was appointed on December 10, 2004, Unity House had suffered nearly $20 million in losses over the prior three years, a decline of over 40% of the organization's fund balance. In an effort to reduce further losses, the Receiver promptly reduced excess staff, bringing the number of employees to levels commensurate with the maintenance of Unity House programs. The Receiver also eliminated the services of "consultants" who were performing non-essential services. Additionally, a limited number of social and sporting events were temporarily suspended to conserve monetary and manpower resources, while others were continued. The core Unity House programs addressing the needs of the Unity House beneficiaries (*e.g.*, scholarships and day care assistance) have been maintained and in some cases expanded. The net effect of these changes was substantial monetary savings to the organization without a significant reduction in the number or quality of essential programs for beneficiaries.

In the year prior to the receivership, the organization had paid $1.3 million to attorneys. Through various cost-saving measures, the Receiver reduced by approximately 35% the amount of attorneys' fees incurred by the organization. Most importantly, the legal services provided by the Receiver's counsel (and other

attorneys retained for various projects on an as-needed basis) have rendered substantial net financial benefits to Unity House. From December, 2005, through early 2006, for example, counsel under the Receiver's direction successfully resolved three lawsuits and settled other potential litigation, resulting in a cash infusion to Unity House of approximately $14.5 million. During that same period, counsel obtained a $250,000 default judgment in Unity House's favor. Moreover, the settlements reached during the early part of 2006 are expected to generate an additional $2.6 to $3.0 million in cash for Unity House this year.

Through a combination of liquidation and re-investment of stock and real estate proceeds, the Receiver reduced Unity House's outstanding debt from $8 million to $2 million. This move was particularly significant because the current trend toward higher interest rates would have substantially increased the cost of carrying Unity House's prior debt. The Receiver also reallocated certain stock investments from a high-risk, under-performing fund to two lower-risk funds, which have performed excellently during the course of the receivership.

The following table summarizes Unity House's financial condition over the past four years:

| Period | 12/31/01-12/31/02 | 12/31/02-12/31/03 | 12/31/03-12/31/04 | 12/31/04-12/31/05 | 12/31/05-3/31/06 |
|---|---|---|---|---|---|
| Beginning Net Asset Values | $ 48,713,062 | $ 39,357,855 | $ 33,937,911 | $ 29,125,998 | $ 27,780,376 |
| Total Revenues | (4,460,825) | 1,204,105 | 804,488 | 1,392,429 | 8,110,324 |
| Costs & Expenses | 4,894,382 | 6,624,049 | 5,574,480 | 2,738,051 | 840,986 |
| Net Gain or (Loss) During Period | $ (9,355,207) | $ (5,419,944) | $ (4,769,992) | $ (1,345,622) | $ 7,269,338 |

7



The Receiver's cost-saving measures and aggressive attempts to collect outstanding receivables reduced losses in 2005 by over 70% compared with the prior year and by approximately 80% compared with the organization's average losses over the prior three years.  And, as of the first quarter of 2006, the Receiver has not only reversed Unity House's financial deterioration and balanced Unity House's budget for the first time in six years, but the Receiver has overseen a substantial increase to the organization's fund balance, as illustrated in the following chart:



**Unity House Fund Balance**

## II. <u>PART TWO</u>:

### TRANSACTIONS OVER WHICH THE RECEIVER HAS RETAINED PRIMARY AUTHORITY PURSUANT TO JUDGE EZRA'S ORDER OF MARCH 14, 2006

A.    *Association of Apartment Owners of Hanohano Hale & Association of Apartment Owners of Pat's at Punaluu v. Unity House, et al.*

This complex, multi-party, pre-receivership litigation arose from a 1997 loan of $3,744,406 that Unity House made to the Hanohano family, for which

certain real property was pledged as collateral. After the Hanohanos defaulted on the loan, protracted litigation ensued. In February, 2005, the Circuit Court ruled that Unity House was entitled to have the collateral redeemed for $10,258,694.12. Unity House moved forward with foreclosure proceedings, while opposing parties threatened to appeal the court's judgment.

After months of negotiations, counsel for Unity House under the Receiver's direction was able to reach settlement agreements with all of the parties. Pursuant to these agreements, Unity House received $9,026,694 in exchange for releasing the properties that had been pledged as collateral in connection with the underlying loan. This amount reflects a reasonable discount from the redemption price set by the trial court in light of the time, expense, and risk of an adverse decision on appeal. Moreover, it represents a substantial improvement over a $6 million settlement that Unity House had negotiated in early 2004, prior to the imposition of the receivership, but which collapsed prior to consummation.

Escrow closed on March 28, 2006, at which point the settlement funds were wired into a Unity House bank account and title to the various properties was transferred. Subsequently, the parties voluntarily stipulated to the dismissal of all related litigation. Howard Glickstein, Esq., a sole practitioner, and Walter Beh, II, Esq., of Rush Moore LLP, were primarily responsible for this matter during the receivership.

No further action is required with respect to this matter.

B.     *Douglas Himmelfarb v. Unity House, Inc., et al.*

This litigation arose out of an alleged agreement between Douglas Himmelfarb and Unity House for the sale of property known as the Marks Estate, a residence on 4.7 acres in Nuuanu, Oahu. Mr. Himmelfarb had signed a Deposit Receipt, Offer and Acceptance ("DROA") to purchase the property from Unity

House for $4,000,000 in mid-2004, but Mr. Himmelfarb subsequently failed to make the required payment at closing and failed to obtain a written extension of the closing date. Mr. Himmelfarb conceded in conversations with the Receiver in December, 2004, roughly one and a half months after the scheduled closing date, that he no longer had a valid claim to the property.

In April, 2005, having determined that the Marks Estate was an under-performing asset and believing that no third party claimed any interest in the property, the Receiver sought and obtained the Court's permission to sell the property at a sale price of no less than 90% of the property's appraised value. The Receiver obtained two appraisals for the property, for $4,500,000 and $4,900,000 in February and September, 2005, respectively.

Mr. Himmelfarb filed suit in August, 2005, seeking to revive the 2004 DROA. Mr. Himmelfarb claimed that he had not defaulted under that agreement but had obtained oral extensions from Anthony Rutledge, Sr., prior to the receivership; that Unity House had in fact defaulted prior to the scheduled closing date (and the institution of the receivership) by allegedly failing to meet disclosure and staking obligations; that Dennis Enomoto of PY, Inc. (a real estate agent acting on Unity House's behalf in 2004) had misrepresented Unity House's legal obligations to Mr. Himmelfarb during negotiations; and that Mr. Himmelfarb therefore still had a right to purchase the Marks Estate for $4,000,000.

The Receiver believed Mr. Himmelfarb's claims to be meritless but urged Mr. Himmelfarb to mediate the dispute because of concerns that factual issues raised by Mr. Himmelfarb could not be resolved without a lengthy trial. At a mediation in December, 2005, the parties reached a settlement, pursuant to which Mr. Himmelfarb purchased the Marks Estate for $4,410,000. Because this price represents 90% of the property's highest appraised value, the settlement was

consistent with the Court's order granting the Receiver permission to sell the property. The sale closed on March 24, 2006. Howard Glickstein, Esq., was the co-lead attorney in this case.

However, days before closing, Dennis Enomoto, the real estate broker, filed a claim with the escrow company alleging that he was entitled to a commission of $132,000 based on his role in negotiating the defunct 2004 DROA. This claim was made despite the fact that the completed sale arose out of a new DROA that was executed as part of the settlement and that protection periods from the prior DROA had expired. Although the Receiver believes that Mr. Enomoto's claim lacks merit and that Unity House may have a claim against Mr. Enomoto for breaches of his obligations to Unity House during the 2004 negotiations and during the pendency of Mr. Himmelfarb's lawsuit, the Receiver was compelled to agree to escrow's withholding of the disputed $132,000 in order to permit the transaction with Mr. Himmelfarb to close as scheduled.[3]

While the Receiver will cooperate with the Unity House Board in determining how to best resolve Mr. Enomoto's claim, the Receiver believes that this issue should be turned over to the Board at this point. The Receiver is no longer a necessary party, and the Board is the proper entity to determine Unity House's approach to what could be a lengthy dispute with Mr. Enomoto.

/ / /

/ / /

---

[3] This issue is complicated by the escrow company's refusal of the parties' (*i.e.*, Unity House's and Mr. Himmelfarb's) demand that the contested funds be released from escrow despite Mr. Enomoto's claim. This refusal was a violation of the escrow agreement, and Mr. Glickstein has since demanded that the escrow company release the funds.

C.    The Radisson Kauai Development

Unity House transferred $2,500,000 to Brian and Joan Anderson in late 2004, prior to the receivership, to partially finance a hotel-to-condo development project on Kauai. Numerous documents that purportedly memorialized the terms of this agreement – some of which were signed, others of which were not – were vague and internally and comparatively inconsistent. However, the transaction envisioned by the parties appears to have been a short-term loan that was to convert automatically to an equity interest in the development if not repaid within a defined period.

The Receiver engaged in lengthy discussions with Mr. Anderson in an attempt to clarify the terms of the agreement and assess the status of the development. During these discussions, it became apparent that the parties fundamentally disagreed on the precise nature and certain terms of Unity House's financial interest and expected return. In addition, the Receiver discovered that the development and marketing of the condominiums was significantly behind schedule.

In order to avoid protracted litigation and ensure Unity House a prompt return on its investment of a sum certain, the Receiver reached a settlement agreement with the Andersons, pursuant to which Unity House was entitled to a return of its $2,500,000 principal together with interest calculated at 30% per annum. This represents a substantial return to Unity House and was achieved without the drafting of a complaint or the filing of a lawsuit. The settlement was executed on March 8, 2006. Although the agreement provided that the Andersons would pay in full by March 31, 2006, in mid-March the Andersons negotiated a 45-day extension with the Receiver. The Andersons claimed that severe weather on Kauai had delayed sales of the condominiums and thus hampered their ability

12

to raise all of the funds. Pursuant to that extension agreement, the Andersons paid Unity House $1 million on March 30, 2006. That amount was applied solely to the interest accrued to date. Daily interest was to continue to run until May 15, 2006, on which date the Andersons committed to pay the outstanding balance of $2,683,315.11.

On May 5, 2006, Brian Anderson sought an additional extension until November 15, 2006, to pay the remaining balance. The Receiver discussed Mr. Anderson's request with a representative of the reconstituted Board of Directors. Pursuant to these consultations and further negotiations with Mr. Anderson, on May 11, 2006, the Receiver granted the Andersons an extension until August 15, 2006, to pay the full balance plus additional interest, conditioned on their making a partial payment of $720,301.42 on June 2, 2006.

D.    *Unity House, Inc. v. Tam*

This action charges that Rudy Tam breached his fiduciary duties and usurped a corporate opportunity in 2003. Mr. Tam was on the Unity House payroll and a member of Unity House's investment committee at the time. In short, Mr. Tam personally undertook a major real estate investment with funds possessed by Unity House. Although the funds at issue were subject to certain restrictions because they were related to federal low-income housing subsidies, Unity House could have used those funds to undertake the same or a similar investment in its own name and obtain the financial benefits that instead went to Mr. Tam. The Receiver concluded that, due to Mr. Tam's relationship with Unity House, he was under a legal obligation to offer the real estate investment opportunity to Unity House and/or to obtain a formal ratification from Unity House. He did neither.

13

After failed attempts to resolve this dispute informally, the Receiver filed suit in December, 2005, in Circuit Court. Mr. Tam's attorney refused service of the complaint, and Mr. Tam evaded personal service. The court granted the Receiver's motion to serve Mr. Tam by mail, but that effort failed because Mr. Tam rejected the mailed complaint. Thereafter, the Receiver moved for and accomplished service by publication.

On April 24, 2006, the day before default would have been entered against Mr. Tam, he filed a motion to dismiss the complaint. Because that motion addressed a version of the complaint that had since been amended, the court denied the motion and allowed Mr. Tam an extension to respond to the operative complaint. On May 9, 2006, Mr. Tam filed another motion to dismiss, which reiterates much of the arguments made in the prior motion. The Receiver expects that his motion will be denied and Mr. Tam will be required to litigate this matter.

In the meantime, counsel for the Receiver plans to notice Mr. Tam's deposition for a date as soon after the hearing on the motion to dismiss as practicable, because Mr. Tam is believed to be seriously ill. Depending on the court's schedule, the deposition is anticipated to take place in June, 2006.

The Receiver does not anticipate that this case will be resolved soon. The Board of Directors should assume control over this litigation upon the discharge of the Receiver. This litigation has been conducted by Steven Egesdal, Esq., a partner at the law firm Carlsmith Ball, LLP. The Board has the option of continuing Mr. Egesdal as counsel or making some other decision about the future of the case.

E.    *Unity House, Inc. v. Heavenly Road Productions, Inc., et al.*

This pre-receivership litigation arose from a failed movie production deal in the late 1990s. Several years ago, a settlement was reached whereby defendants,

14

Heavenly Road Productions, Inc., and Michael Lucas, were to pay $537,303.00 to Unity House. Defendants never performed on this agreement. Since the receivership was instituted, the court granted Unity House's request that the settlement be enforced and denied defendants' attempts to seek reconsideration of that decision.

Defendants have appealed to the Hawaii Supreme Court, where the case is currently pending. However, defendants have not posted a bond in order to stay execution of the lower court's judgment during the appeals process. Executing on the judgment would require that Unity House retain mainland counsel. The question of whether to proceed to collect this debt was deferred by the Receiver because of the resolution of this criminal case and the impending change in Unity House management. The reconstituted Board of Directors has recently instructed the Receiver to initiate efforts to collect on the judgment. David Gierlach, Esq., who was also responsible for the matter prior to the receivership, is currently the lead attorney on this case.

F.    *Unity House, Inc. v. Chabad Lubavitch of Hawaii, Inc., et al.*

The Receiver initiated this litigation in August, 2005, against Chabad Lubavitch of Hawaii, Inc., to collect on a defaulted loan of over $200,000. Attempts by Unity House to collect this debt prior to the receivership had been abandoned, and by the time the Receiver was appointed, the collateral had become worthless. On February 28, 2006, counsel for Unity House filed a motion for summary judgment, which defendants have opposed. The hearing on this motion was continued by stipulation to allow the parties an opportunity to participate in settlement discussions. The defendants made a settlement offer of $25,000, which was rejected by the Receiver. As of the date of this report, settlement negotiations are continuing.

15

Although defendants have claimed insolvency, the Receiver learned that the defendants own property in Waikiki that has recently been removed from foreclosure proceedings and which the defendants are in the process of refinancing. On April 13, 2006, counsel applied to the court for a prejudgment writ of attachment on this property.

The court considered both the pending motion for summary judgment and the request for a prejudgment writ of attachment at a hearing on May 16, 2006. The court denied the motion for summary judgment after finding that an issue of fact remains regarding whether Anthony Rutledge, Sr. settled this matter with the defendants after they defaulted on the loan. The court granted the Receiver's request for a prejudgment writ of attachment. After consulting with Unity House's Executive Director, counsel for the Receiver posted the bond necessary to obtain the prejudgment writ of attachment on May 16, 2006.

Because this litigation has been primarily conducted by Jason Tani, Esq., of Rush Moore LLP, the Board may decide to continue Rush Moore's services after discharge of the Receiver.

G.    *Ilae, et al. v. EG&G Technical Services, Inc., et al.*

This suit was filed on December 21, 2005, against EG&G Technical Services, Inc. and its agent Anthony Pounders in their capacity as Receiver of Unity House. Plaintiffs were various members of the former Unity House Board of Directors who had been displaced during the receivership. Plaintiffs claimed that certain acts the Receiver had allegedly taken or allegedly planned to take were improper. The Receiver filed a motion to dismiss on January 10, 2006. Prior to a hearing on that motion, plaintiffs stipulated to the voluntary dismissal of the action, which the Court signed and filed on April 6, 2006. Although the dismissal preserved any related claims plaintiffs may have against the United States



government, the dismissal resolved all claims against the Receiver and its agents and attorneys.[4]

No further action is required with respect to this matter.

H.    *Hawaii Pacific Cinema Development Foundation, et al. v. Beacon Edge Pictures LLC, et al.*

This pre-receivership litigation arose out of a $1 million investment by Unity House in a film project with Beacon Edge Pictures, LLC.  When the venture stalled, the defendants were contractually required to return the entire investment to Unity House.  However, $250,000 of the $1 million was not returned.  The Law Offices of Philip R. Brown have served as lead counsel for the Receiver in this matter.

After completing service by publication, counsel under the Receiver's direction obtained a default judgment against defendants in the amount of $250,000, plus interest (which is continuing to accrue), costs, and attorneys fees. The reconstituted Board has recently instructed the Receiver to initiate efforts to collect on this judgment, which may require the hiring of a mainland investigator and/or counsel.  As a result of preliminary efforts in this regard, the Receiver has located previously-undisclosed property in California and Nevada owned by one of the defendants.

/ / /

/ / /

/ / /

---

[4] On May 15, 2006, counsel for the Receiver received a letter from Unity House's insurance carrier, denying coverage for any claim on behalf of EG&G Technical Services, Inc., or Anthony Pounders arising out of this matter.

III.   **PART THREE:**

**STATUS OF OTHER MATTERS OVERSEEN BY THE RECEIVER**

A.   IRS Audit

Early in the receivership, the Receiver became concerned that pre-receivership changes to Unity House's corporate structure and various activities engaged in by the prior management might have compromised Unity House's status as a tax-exempt labor organization under § 501(c)(5) of the Internal Revenue Code. These concerns were triggered in part by allegations in the Indictment indicating that prior Unity House management had violated legal restrictions applicable to such tax-exempt entities. The Receiver retained the tax consulting firm Bowen Hunsaker Hirai and Craig Hirai to investigate and report on this issue. The results of their analysis indicated a number of potential compliance issues (detailed in the Receiver's October 2005 report) that may need to be remedied in order to reduce or avoid Unity House's potential liability and to maintain its tax-exempt status.

To identify and remedy these issues, the Receiver invited the Internal Revenue Service Tax Exempt and Governmental Entities Division to conduct a review of Unity House's structure and activities. The Receiver's actions in this regard reflected the Receiver's perception that a proactive approach would best protect the organization's interests by (1) ensuring that any necessary remedial steps are taken at the earliest possible date and are consistent with IRS requirements; (2) preempting the IRS-initiated audit that was likely to follow the highly-publicized indictments in this matter; and (3) promoting the likelihood that any compliance issues will be resolved amicably (*e.g.,* by way of a favorable closing agreement) through good-faith cooperation with the IRS. Although the

18



IRS initially deferred conducting a review in light of the pending criminal matter, it changed course and began a formal review in late October, 2005.

The Receiver has cooperated with IRS auditors, who have issued a number of requests for information and conducted extensive document review at the Unity House premises. The IRS Information Document Requests delivered to Unity House while under the Receiver's control are attached hereto as Exhibits B, C and D. The Receiver provided the IRS access to documents and records requested in Exhibits B and C. Upon the return of the reconstituted Board of Directors, the Board assumed responsibility for working with the IRS and responding to Exhibit D. The Board has retained the Washington, D.C. law firm of Williams & Connolly LLP to represent Unity House in this matter.

As expected, the IRS has expressed significant concerns about Unity House's current organizational structure, activities, and expenditures. The Receiver has not been informed of any anticipated date by which the IRS intends to complete its review.

B.    *Aarona, et al. v. Unity House, Inc., et al.*, No. CV05-00197 (DAE) (BMK), United States District Court for the District of Hawaii

This lawsuit was filed on March 20, 2005, by fifteen individuals (including prior Board members and officers) and UNITE HERE Local 5 against Unity House, Inc., and certain individual defendants, including Anthony Rutledge, Sr., Aaron Rutledge, and several members of the Unity House Board of Directors who were serving as of the date the receivership was initiated. Its allegations largely mirror those in the criminal Indictment in the present case. The plaintiffs seek, among other things, the reestablishment of Unity House membership and the election of a new Board of Directors by the organization's membership.

19



Through most of 2005 and into the beginning of 2006, the *Aarona* case was stayed pending developments in the criminal case. In response to the plea agreements in the criminal case and the possibility of the imminent termination of the receivership, however, *Aarona* became active again. With the return of the reconstituted Board of Directors (some of whom are defendants in the *Aarona* case), the Court appointed EG&G Technical Services, Anthony Pounders, Dwight Kealoha (the Interim Executive Director of Unity House during the receivership), and Walter Lum (the Unity House Comptroller) as custodians of the records of Unity House. This order served to prevent spoliation of evidence that may be relevant to the resolution of the *Aarona* case, as well as to preserve documents for the IRS investigation. Because EG&G Technical Services and Anthony Pounders will soon be discharged in their role as Receiver, and because Dwight Kealoha has not been retained by the Board of Directors as Executive Director and has been relieved of his duties as custodian, pursuant to a May 15, 2006, order Walter Lum is now the sole custodian of the records.

Jeffrey S. Portnoy, Esq., of the Cades Schutte law firm has been retained by the reconstituted Board to further represent Unity House in the *Aarona* case. The Receiver has fully cooperated with Mr. Portnoy's requests for information and documents related to the case.

C.    National Union Insurance Dispute

Unity House's primary insurance carrier pre-emptively denied Unity House coverage for potential liability arising out of the *Aarona* litigation. *See supra* Part III.B. The primary basis for the insurer's denial (which has since been invoked by the insurer in other contexts) is an endorsement that the insurer unilaterally incorporated into the policy after Unity House allegedly failed to provide requested financial information during the yearly policy renewal process in

November 2004.[5]  The Receiver believes that the insurer's position is erroneous and has been undertaken in bad faith.

Counsel for the Receiver has briefed the reconstituted Board of Directors regarding this issue and has provided additional material to Jeffrey Portnoy, Esq., of the Cades Schutte law firm, who is investigating this matter on behalf of the reconstituted Board.  The Receiver believes that Unity House may have a meritorious bad faith claim against the insurer, but the reconstituted Board must decide whether to initiate litigation.

## CONCLUSION

Over the past year and a half, the Receiver has overseen all aspects of the management of Unity House.  The Receiver has successfully maintained the core programs that Unity House provides for its beneficiaries, and has reached favorable resolutions of various transactions and complex litigation.  As is demonstrated perhaps most graphically by the reversal of the organization's financial decline, Unity House is in much better financial and operating condition at the conclusion of the receivership than it was when the receivership was imposed.  When the Receiver took custody of its assets on December 10, 2004, the Unity House fund balance was approximately $29 million; as of March 31, 2006, the Unity House fund balance exceeds $35 million and is expected to continue to rise, based on actions taken during the receivership.

---

[5]  During the relevant time period (which overlapped with the institution of the receivership), the insurer communicated exclusively with Unity House's insurance broker, Bank of Hawaii Insurance Services, Inc.  The Receiver has worked with representatives of Bank of Hawaii Insurance Services, Inc., in an attempt to determine all relevant events and evaluate the insurer's actions.

After filing this Report, the Receiver will draft and then confer with counsel for the reconstituted Board regarding an appropriate stipulated order discharging the Receiver – the final step in concluding the receivership.  The Receiver anticipates presenting a proposed discharge order to the Court by the end of May or early June, 2006.

Respectfully submitted,

EG&G TECHNICAL SERVICES, INC.,
and its agent, ANTHONY POUNDERS

BROOK HART
Law Offices of Brook Hart

FRED H. ALTSHULER
Altshuler, Berzon, Nussbaum, Rubin &
    Demain

By:  *Brook Hart*
      Brook Hart

Attorneys for Unity House, Inc., in
Receivership

DATED:  Honolulu, Hawaii, May 19, 2006.