## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT (hereinafter "Agreement") is made this 24th day of October, 2003, by and among the following parties:

A.   CITY AND COUNTY OF HONOLULU, a municipal corporation of the State of Hawaii, acting through its Director of the Department of Budget and Fiscal Services (hereinafter "City");

B.   UNITY HOUSE, INCORPORATED, a Hawaii non-profit corporation (hereinafter "Unity House"); and

C.   INVESTMENT GROUP LLC, a Hawaii limited liability company (hereinafter "Group").

### WITNESSETH:

The City, Unity House and Group, in consideration of the mutual promises and covenants hereinafter set forth, agree as follows:

1.   **Background and Intent.**

(a) Phase II Purchase

On November 29, 2000, the City filed a lawsuit (Civil No. 00-1-3637-11) in the Circuit Court of the First Circuit, State of Hawaii (the "Lawsuit"), alleging, inter alia, that:

(i)    the City and Unity House entered into that certain Real Estate Purchase and Sale Agreement dated April 30, 1998, as amended by that certain Amendment to the Agreement dated April 30, 1998 (collectively the "Purchase Agreement");

(ii)   the Purchase Agreement called for Unity House's purchase and development of 153 improved lots in Area A of the Ewa Villages Revitalization Project ("Area A") in two phases — Phase I and Phase II;

(iii)  Phase I involved the purchase of 96 lots at a purchase price of $9,216,000.00 (the "Phase I Purchase"), with a closing date of April 30, 1998;

(iv)   Phase II involved the purchase of 57 lots at a purchase price of $5,472,000.00 (the "Phase II Purchase"), with a closing date of August 31, 1998, and an option to terminate the Purchase Agreement as to the Phase II Purchase (the "Phase II Option") if Unity House notified City in writing by August 25, 1998 (the "Phase II Option Deadline");

EXHIBIT **G**

(v) the Phase I Purchase was consummated to the City's satisfaction, but to this date, the Phase II Purchase has not been consummated, nor was the Phase II Option exercised by the Phase II Option Deadline;

(vi) Unity House had the ability and means to consummate the Phase II Purchase by August 31, 1998 but did not do so, thus breaching the Purchase Agreement; and

(vii) the City has made several demands on Unity House to perform under the Purchase Agreement and consummate the Phase II Purchase.

In the Lawsuit, Unity House denied any liability to the City on the grounds that, *inter alia*,:

(viii) Unity House had verbally notified the City prior to August 25, 1998 of its intention not to proceed with the Phase II Purchase pursuant to the Phase II Option;

(ix) Unity House confirmed its intentions in writing by letter, dated August 31, 1998, to the City;

(x) Unity House had substantially performed under the terms and conditions of the Purchase Agreement with respect to the Phase II Purchase and the Phase II Option and did not materially breach the Purchase Agreement;

(xi) the City was not damaged, materially or otherwise, by the five (5) day delay by Unity House in providing written notification of its intent not to proceed with the Phase II Purchase in that the City took no action nor did it refrain from taking any action in reliance upon the fact that Unity House did not provide written notification by the Phase II Option Deadline.

In the Lawsuit, the City sought, *inter alia*, a judgment requiring Unity House's specific performance of its obligations in the Purchase Agreement, including but not limited to consummation of the Phase II Purchase (or damages to be determined at trial), and payment of the City's interest, legal fees and costs incurred to enforce the Purchase Agreement. The City's Motion for Summary Judgment to compel specific performance by Unity House was filed, came on for hearing, and was denied. Additionally, the issue of alternative damages has not yet been adjudicated in any court.

(b) Area A Interest

Outside the scope of the Lawsuit, the City further alleged and claimed that Unity House improperly received $24,585.80 (the "Area A Interest") in interest earned on funds provided by the City in connection with the sale of certain Area A properties by the City to Unity House.

(c) Program Income

Also outside the scope of the Lawsuit, the City further alleged and claimed:

(i) During an annual monitoring of the City's Community Development Block Grant ("CDBG") program for the year 2000, the U.S. Department of Housing and Urban Development ("HUD") identified $1,107,539.00 that Unity House received in CDBG program income from the Lokahi Greens Project (the "Program Income"), which Program Income was confirmed by an independent financial and compliance audit;

(ii) By the terms of Subrecipient Agreement F62368 between the City and Unity House, Unity House was required to return the Program Income to the City; and

(iii) Unity House continues to possess the Program Income, though it has no authorization to keep or use the Program Income, and the City has demanded several times that Unity House return the Program Income to the City.

Unity House denies these further allegations and the claims by the City and others related to the Area A Interest and the Program Income and any liability to the City or any other party relating thereto.

The Parties hereto enter into this Agreement in order to settle, release and terminate fully, finally and forever the Claims, as defined hereinbelow in Section 2(a).

2.   Definition of Terms.

For purposes of this Agreement, the following terms shall have the meanings set forth below:

a.   Claims.  "Claims" means any and all past, present, or future claims, allegations, assertions, issues, disputes, controversies, actions, causes of action, liability or liabilities, judgments, awards, interest, costs, fees, commissions, expenses, demands, losses, injuries or damages (past, present, or future) to persons or property, of whatsoever name, kind, or nature, whether at law or in equity, whether in tort, in contract or otherwise, whether known or unknown, anticipated or unanticipated,

-3-

suspected or unsuspected, concealed or unconcealed, or
patent or latent, including, but not limited to, all claims
regarding conduct, misconduct, actions, decisions, acts,
omissions, failures to act, statements, misstatements,
representations, misrepresentations, reliance, performance
or breach of covenants, promises, agreements, warranties,
duties or obligations (including statutory duties or
obligations), or contracts, or violations of constitutional,
civil, statutory or other rights, and for past, present and
future special, general, compensatory, economic or
noneconomic, direct or consequential, liquidated, statutory
or punitive damages, reimbursement, indemnity, contribution,
subrogation, injunctions, equitable remedies, or other
relief, including, but not limited to, attorneys' fees,
costs, expenses, commissions, interest, and any and all
litigation-related costs or expenses, including costs or
expenses of settlement, which in any manner arise out of or
are based upon, connected with, or otherwise in any way
related to the Phase II Purchase, Area A Interest, and the
Program Income, including, but not limited to, any claim
which was asserted or could have been asserted in the
Lawsuit.

The Parties hereto agree that this Agreement shall
apply to all injuries, damages or consequences claimed in
any manner to be related to or connected with or to arise
out of the Claims as defined hereinabove, whether such
injuries, damages or consequences are known or unknown,
suspected or unsuspected, anticipated or unanticipated,
concealed or unconcealed, patent or latent, past, present or
future, and whether or not such injuries, damages or
consequences were disclosed.

b.    Party/Parties.  "Party" means each of the City,
Unity House and Group.  "Parties" means the City, Unity
House, and Group.

c.    Person.  Unless otherwise expressly stated in
this Agreement, "person" means any individual, corporation,
association, partnership, joint venture, trust, institution,
organization, government, department, agency, or other
entity, and his, her or its legal representative(s).

3.    Authority.  The Parties represent and warrant to
each other that they are the present owners of the
respective Claims being settled and released herein, that
they have not sold, assigned, transferred, conveyed,
encumbered or otherwise disposed of or purported to sell,
assign, transfer, convey, encumber, or otherwise dispose of,
voluntarily or involuntarily, or by operation of law, any of
the Claims, and that they have complete authority to
compromise, settle, and release the Claims.  The Parties
represent and warrant to each other that they have full
power and authority to enter into this Agreement, and to

-4-

perform in accordance with its terms, and that any
representative executing this Agreement on behalf of any
Party is duly authorized by his, her or its principal to
execute and deliver this Agreement.  Each signatory of this
Agreement represents and warrants that he, she or it
received full and adequate consideration for his, her or its
undertakings and obligations herein.

4.   Finality.

The terms of this Agreement have been approved by the City
Council of the City & County of Honolulu on or about July 24,
2003, and shall become final, binding and effective upon, and
only upon:

(a)   *Execution of Agreement.*  The execution of this
Agreement by all Parties;

(b)   *HUD Confirmation.*  Confirmation by HUD that: (1)
resolution of the Program Income dispute between the
City and Unity House was encouraged by HUD, and (2)
pursuant to that certain letter dated July 24, 2003 by
HUD, HUD has determined: (i) the New Property is CDBG
eligible; (ii) upon completion of item 4(d) below, the
City will satisfy its obligations under the City's CDBG
Workout Agreement executed October 4, 2002, and (iii)
HUD will close its monitoring finding M01-039(FMG)
after Group acquires the New Property and provides HUD
with documentation related to the New Property's fair
market value;

(c)   *Representations Regarding Group.*  The City receiving
certain representations in writing and in form and
content satisfactory to the City, from Unity House,
Group, and Rudy Tam regarding HUD's encouragement of
the resolution of the dispute between the City and
Unity House, and HUD's acknowledgement of Group, as
follows:

i.   Group is solely controlled by Rudy Tam as its
Manager.

ii.   HUD is aware of Rudy Tam's relationship with
Unity House and Group.

iii.   Group was selected by Unity House to receive
the Program Income, and HUD has no objections.

(d)   *Return of Program Income.* Unity House returning the
Program Income in the amount of $1,107,539.00 to the
City by transferring the Program Income to Group which
in turn shall purchase and acquire (and eventually
develop and improve as a CDBG-eligible low-to-moderate

income project) the fee simple interest and other property interests (the "**Fee Simple Interest**"), and the leasehold interest and improvements, and other property interests ("**Leasehold Interest**") located at 45-683 Kamehameha Highway, Kaneohe, Hawaii, and identified by Tax Map Key: 4-5-049-022 (1) (separately and collectively, the "**New Property**"), comprising a portion of that certain CDBG-eligible low-to-moderate income project known as the "Val Hala Apartments."

*Property Description.*  The New Property covers an area of 26,940 square feet more or less, and consists of 25 2-bedroom apartments located in two, concrete masonary apartment buildings — Building C and Building D of the Val Hala Apartments.  Building C, constructed in 1965, is a three-story structure containing 9 two-bedroom, one bath units, with approximately 2,028 square feet of floor area per floor for a total area of 6,084 square feet.  Building D, constructed in 1965, is a four-story structure containing 16 two-bedroom, one bath units, with approximately 2,704 square feet of floor area per floor for a total area of 10,816 square feet. There are a total of 25 open parking stalls appurtenant to Building C and Building D.

*Compliance with Laws.*  The purchase and acquisition of the New Property is to be made in accordance and in compliance with all applicable law, including but not limited to CDBG requirements and rules found in 24 CFR Part 570 (including but not limited to 24 CFR 570.201, 202 and 208).

*Purchase Transactions.*  Group will purchase the Fee Simple Interest pursuant to that certain Purchase and Sale Agreement dated July _____, 2003, by and between EJA Partners, as Seller, and Group, as Purchaser, for U.S. $842,500.00. Group will simultaneously purchase the Leasehold Interest pursuant to that certain Sale and Purchase Agreement dated July 25, 2003 by and between J.P Ing Family Limited Partnership, a Hawaii limited partnership, as Seller, and Group, as Purchaser, for U.S. $900,000.00.

*Appraisal.*  A Summary Appraisal Report dated August 18, 2003, prepared by Sanford D. Goto, Inc. for First Hawaiian Bank, reflects the following:

> . . . the market value of the fee simple interest, as if unencumbered by the existing ground lease, in the property located at 45-683 Kamehameha Highway, Kaneohe, Island of Oahu, State of Hawaii, and identified on the tax maps of the State of Hawaii as Division 1, Zone 4, Section 5, Plat 49, Parcel 22, as of August 18, 2003, is:

ONE MILLION EIGHT HUNDRED TWENTY THOUSAND DOLLARS

($1,820,000)

This value conclusion includes an estimated $20,000 in personal property represented by the depreciated value of the trade fixtures, furnishings and equipment. Deducting the estimated value of the personal property yields a real property value of $1,800,000.

Notwithstanding anything to the contrary herein, if the New Property cannot be purchased because its appraisal is greater than the purchase price proposed by Unity House and/or Group, causing the current New Property owner to opt for a higher purchase price, Unity House and Group will be allowed to substitute in, and purchase and acquire (and eventually develop and improve), another CDBG-eligible low-to-moderate income project acceptable to HUD, and such project shall be thereafter and herein known as the "New Property."

(e) *New Property Purchase and Closing.*  Purchase and acquisition of the New Property by Group, with closing no later than 5 p.m. of September 19, 2003; however, the parties agree that if the closing cannot be completed by this date due to no fault, act or conduct of any party, the closing date may be extended up to and including October 30, 2003;

(f) *Subrecipient Agreement.*  Execution and delivery by Unity House and/or Group, as the case may be, of a Subrecipient Agreement in form and content satisfactory to the City, Unity House and the Group, or in the alternative, Group's assumption and agreement to fulfill the Subrecipient's obligations under that certain Subrecipient Agreement F62368 by and between the City and Unity House;

(g) *Area A Interest Payment.*  Payment of the Area A Interest by Unity House to the City; and

(h) *Lawsuit Dismissal.*  Execution and filing of the Stipulations for Dismissal with Prejudice of the Lawsuit.

The Parties agree that the foregoing items in this Paragraph 4 are all conditions precedent to this Agreement, and that no part of the Agreement shall become final, binding or effective unless and until all such conditions have been satisfied, and in the event any of the foregoing conditions is not satisfied, this Agreement and all such conditions, whether performed in whole or in part or pending performance, and all acts taken pursuant to such conditions shall be void *ab initio*, and the Parties further agree that in such case, they shall take such steps and shall execute and exchange such documents as may be reasonably necessary to effect and/or reflect such voidness,

including, for example, but without limiting the scope of this
provision, the return of any monies paid by the City and/or Unity
House.

5.    **Consideration.**

(a)  **Unity House's Consideration.**  As consideration
for this Agreement, Unity House agrees to:

(i)    execute or have executed this Agreement;

(ii)   execute or have executed and have filed with the
First Circuit Court, State of Hawaii, the
Stipulation for Dismissal with Prejudice of the
Lawsuit;

(iii)  release all Claims against City and its officers,
employees, and agents;

(iv)   return the Program Income in the amount of
$1,107,539.00 to the City by transferring the
Program Income to Group which in turn shall
purchase and acquire (and eventually develop and
improve as a CDBG-eligible low-to-moderate income
project) the New Property, said purchase and
acquisition of the New Property to be made in
accordance and in compliance with all terms and
conditions contained herein, and all applicable
law, including but not limited to CDBG
requirements and rules found in 24 CFR Part 570
(including but not limited to 24 CFR 570.201, 202
and 208);

(v)    cause Group to purchase and acquire the New
Property in accordance and in compliance with all
terms and conditions contained herein, and all
applicable law, including but not limited to CDBG
requirements and rules found in 24 CFR Part 570
(including but not limited to 24 CFR 570.201, 202
and 208), with closing to occur not later than 5
p.m. of September 19, 2003;

(vi)   execute and deliver, or cause the execution and
delivery by Group, as the case may be, of a
Subrecipient Agreement in form and content
satisfactory to the City, or in the alternative,
cause Group's assumption and agreement to fulfill
the Subrecipient's obligations under that certain
Subrecipient Agreement F62368; and

(vii) pay the Area A Interest to the City, said monies
to be paid to the Director of the Department of
Budget and Fiscal Services at a place and time
designated by said Director no later than
September 30, 2003.

(b) **Group's Consideration.** As consideration for this
Agreement, Group agrees to execute or have executed this
Agreement, and accept the Program Income in the amount of
$1,107,539.00 from Unity House and purchase and acquire (and
eventually develop and improve) the New Property, in
accordance and in compliance with all terms and conditions
contained herein, and all applicable law, including but not
limited to CDBG requirements and rules found in 24 CFR Part
570 (including but not limited to 24 CFR 570.201, 202 and
208), with closing to occur not later than 5 p.m. of
September 19, 2003, and to the extent necessary, to assume
and agree to fulfill the Subrecipient's obligations under
that certain Subrecipient Agreement F62368;

(c) **City's Consideration.** As consideration for this
Agreement, City agrees to:

(i) execute or have executed this Agreement;

(ii) execute or have executed and have filed with the
First Circuit Court, State of Hawaii, the
Stipulation for Dismissal with Prejudice of the
Lawsuit; and

(iii) release all Claims against Unity House and its
officers, employees, and agents.

6. **Release.**

Unity House, for itself, for all persons, entities or
organizations claiming by, through or under it, and for all of
its respective present, former and future officers, directors,
principals, agents, employees, insurers, bonding companies,
subrogees, indemnitors, partners, joint venturers, members,
shareholders, owners, parent corporations, subsidiaries, other
corporate affiliates, affiliated entities, assigns, survivors,
heirs, executors, successors, successors in trust, successor
trustees, trustees, trustees in bankruptcy, receivers, personal
representatives, contractors, architects, engineers, real estate
brokers or agents, attorneys, administrators and designees,
agrees to indemnify, defend and hold harmless, and does hereby
release, acquit and forever discharge, the City, and all of the
City's present, former and future departments, agencies,
divisions, subdivisions, officers, directors, principals, agents,
employees, insurers, bonding companies, subrogees, indemnitors,
partners, joint venturers, members, shareholders, owners, parent
corporations, subsidiaries, other corporate affiliates,
affiliated entities, assigns, survivors, heirs, executors,

-9-

successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees, from and on account of any and all of the Claims as described in Paragraph 2.a hereinabove where such claims are made by, through or on behalf of Unity House.

The City, for itself, for all persons, entities or organizations claiming by, through or under it, and for all of their respective present, former and future departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent corporations, subsidiaries, other corporate affiliates, affiliated entities, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees, agrees to indemnify, defend and hold harmless, and does hereby release, acquit and forever discharge Unity House, and all of Unity House's present, former and future departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent corporations, subsidiaries, other corporate affiliates, affiliated entities, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees, from and on account of any and all of the Claims as described in Paragraph 2.a hereinabove where such claims are made by, through or on behalf of the City.

The City, for itself, for all persons, entities or organizations claiming by, through or under it, and for all of their respective present, former and future departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent corporations, subsidiaries, other corporate affiliates, affiliated entities, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees, agrees to indemnify, defend and hold harmless, and does hereby release, acquit and forever discharge Investment Group LLC, and all of its present, former and future departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent

corporations, subsidiaries, other corporate affiliates, affiliated entities, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees, from and on account of any and all of the Claims as described in Paragraph 2.a hereinabove where such claims are made by, through or on behalf of the City, provided, however, Investment Group LLC is not released from any obligations under this Agreement or under any agreement related to its purchase, acquisition, development and improvement of the New Property.

7.    Joint Tortfeasors/Joint Obligors.

This Agreement shall operate as a Joint Tortfeasor Release within the meaning of Section 663-11 through Section 663-17, Hawaii Revised Statutes, and shall, within the meaning of Section 663-14, Hawaii Revised Statutes as it was in force prior to the enactment of Act 300 of 2001. This Agreement shall operate to reduce to the extent of the pro rata share of any liability of the persons and parties herein released or by the amount of the consideration paid for this Agreement, whichever shall be greater, any damages, judgment or award hereafter recovered or recoverable by any Party to this Agreement in any lawsuit against any other tortfeasor relating to the Claims.

The Parties hereto intend that this Joint Tortfeasor Release shall be applicable to all claims, demands and causes of action, whether asserted under federal statutes or under Hawaii statutes or under common law, including claims, demands and causes of action to which the Hawaii Uniform Contribution Among Tortfeasors Act may not otherwise apply, in the absence of this Joint Tortfeasor Release, as if the applicable law provided that said Hawaii Uniform Contribution Among Tortfeasors Act controlled contribution among persons, entities and/or organizations jointly or jointly and severally liable for such claims, demands and/or causes of action.

This Agreement shall also operate as a Joint Obligor Release and shall reduce the amount of the City's claims against co-obligors to the extent that the City knew or had reason to know of Unity House's obligation to such co-obligor or if the City has no reason to know of such obligation, then the City's claims against co-obligors shall be reduced by the lesser of two amounts, namely (1) the amount of the fractitional share of the Unity House or (2) the amount that Unity House was bound by contract or relation with an co-obligor to pay in accordance with Sections 483-3 through 5 of the Hawaii Revised Statutes.

The Parties hereto acknowledge and agree that this Agreement and the settlement embodied herein are entered into in good faith as contemplated by Section 663-15.5 of Hawaii Revised Statutes.

8.   Covenant Not to Sue.

The City and Unity House each agrees and covenants, on behalf of itself and all persons, entities or organizations claiming by, through or under it, and all of their respective present, former and future (as applicable and as the case may be) departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent corporations, subsidiaries, other corporate affiliates, affiliated entities, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators, and designees, that they shall not sue the other Parties, and/or any other released person or entity identified in Paragraph 6 hereinabove regarding any of the Claims and shall not assert any of the Claims which have been released herein against the other Parties, or any other released person or entity identified in Paragraph 6 hereinabove in a judicial or administrative action, appeal or proceeding; provided, however, that the aforesaid covenant shall in no way extend to any claim filed on a claim of breach of this Agreement, the Subrecipient Agreement, or any other instrument or agreement contemplated by section 9 of this Agreement, or any other matters reinstated upon voidance of this Agreement following failure of one or more of the conditions precedent described in Paragraph 4 above.  This Agreement may be pleaded to bar any such assertion.

9.   Duty of Cooperation.

The Parties hereto agree to cooperate fully and to execute any and all supplemental documents and to take any and all additional actions that may be necessary to give full force and effect to the terms and intent of this Agreement.

In case of a breach of this Agreement, in addition to all relief allowed at law or in equity, the nonbreaching Party shall be entitled to reimbursement for any necessary expenses, attorneys' fees and/or costs incurred in the enforcement of any part of this Agreement.

10.  Denial of Liability.

The Parties hereto acknowledge and agree that execution of this Agreement, the performance thereof, or the payment and transfer of the consideration provided for herein does not constitute an admission of liability, misconduct or fault of any kind whatsoever or an admission of violation of any applicable federal, State, City or judicial law, ordinance, rule, regulation, guideline, procedure or other standard or requirement of any kind whatsoever by either Party, and that this Agreement shall be construed strictly and solely for purposes of settling

-12-

and/or compromising the Parties' disputes between each other and in order to avoid future controversy, litigation, and expense.

### 11. Approval by Counsel.

The Parties acknowledge that the terms of this Agreement have been read, that such terms are fully understood, that the parties have had a full and adequate opportunity to have such documents reviewed by their respective counsel, and that such documents have been duly signed by them or their authorized representatives as the free act and deed of the Parties. It is agreed that, if a Party chooses not to consult with an attorney about this Agreement, the Party had an opportunity to do so and nevertheless fully understands this Agreement and assumes full responsibility for all obligations contained herein.

### 12. Attorneys' Fees, Costs and Expenses.

No Party to this Agreement will make any claim against any other Party for their respective attorneys' fees, costs, expenses, commissions, interest or costs of settlement incurred in the prosecution, investigation, defense, settlement or dismissal of the Claims or the Lawsuit.

### 13. No Other Consideration or Promises; Complete Agreement.

The Parties hereto further understand and agree that no other consideration has been promised nor will any be paid or rendered by any Party hereto to the other Party. It is further understood and agreed that this Agreement constitutes the entire, complete and fully integrated agreement of the Parties regarding all matters addressed herein and supersedes all prior or contemporary negotiations, agreements, and communications, whether oral or written. There are no terms to the Parties' agreement that are not expressed in writing in this Agreement.

### 14. Interpretation and Enforcement.

This Agreement shall be interpreted to give effect to the purpose and intention of the Parties, as stated herein. This Agreement has been negotiated at arm's length among sophisticated Parties represented by counsel. Thus, the rule of "interpretation against the draftsman" shall not apply if any dispute arises over the interpretation of the terms of this Agreement.

The First Circuit Court of the State of Hawaii shall have exclusive jurisdiction over any action to enforce the terms of this Agreement. The substantive and procedural laws of the State of Hawaii, exclusive of its choice of law provisions, shall govern the interpretation and enforcement of this Agreement.

15.   **Binding Effect and Benefit Inurement.**

Except as otherwise provided herein, all of the terms of this Agreement shall have binding legal force and effect and be chargeable as to, and shall inure to the benefit of, each of the Parties who have executed such documents, all of the present, former, and future departments, agencies, divisions, subdivisions, officers, directors, principals, agents, employees, insurers, bonding companies, subrogees, indemnitors, partners, joint venturers, members, shareholders, owners, parent corporations, subsidiaries, other corporate affiliates, affiliated entities, predecessors, assigns, survivors, heirs, executors, successors, successors in trust, successor trustees, trustees, trustees in bankruptcy, receivers, personal representatives, contractors, architects, engineers, real estate brokers or agents, attorneys, administrators and designees of each of the Parties, and anyone claiming by, through or under any of the Parties.

16.   **Number.**

The singular as used in this Agreement shall include the plural, and the plural shall include the singular where appropriate.  The use of one gender shall include the masculine, feminine, and the neuter genders as may be appropriate.

17.   **Captions or Headings.**

The captions or headings of paragraphs and subparagraphs used in this Agreement are utilized for convenience, reference and identification purposes only, and shall not control, define, limit or affect any term of this Agreement.

18.   **Good Faith and Due Diligence.**

The Parties agree to exercise good faith and due diligence in carrying out the terms of this Agreement.

19.   **Amendments in Writing.**

No amendment, alteration, modification or revision to this Agreement shall have any legal force and effect or be binding on a Party unless the amendment, alteration, modification or revision is executed in writing by both of the Parties or their respective successors in interest.

20.   **Counterparts.**

This Agreement may be executed in two or more counterparts, and when all counterparts have been executed, each counterpart shall be considered an original, but all counterparts shall constitute one and the same document; and in making proof of this Agreement, it shall not be necessary to prove or account for more than one such counterpart.

21. **Facsimile Signatures.**

Facsimile signatures shall be binding and effective for all purposes as original signatures. The Parties agree to promptly deliver original signature pages.

22. **Time is of the Essence.**

Time is of the essence with respect to all aspects of this Agreement.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the date first above written.

THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THE FOREGOING AGREEMENT AND KNOW THE CONTENTS THEREOF AND AGREE TO SAME AS THEIR OWN FREE ACT AND DEED AND WITH THE ADVICE OF LEGAL COUNSEL.

UNITY HOUSE, INCORPORATED

By _____
Print Name: RANDALL HARAKAL
Office: Vice President / Exec Direct
General Counsel

INVESTMENT GROUP LLC

By _____
Print Name: Rudy Tam
Office: Manager

CITY AND COUNTY OF HONOLULU

By _____
IVAN M. LUI-KWAN
Director
Department of Budget and
    Fiscal Services

APPROVED AS TO FORM:

GREGORY J. SWARTZ
Deputy Corporation Counsel
Attorney for City and
   County of  Honolulu


APPROVED AS TO FORM:

Lee Nakamura, Esq.
Tom Petrus & Miller, LLLC
Attorneys for Unity House,
   Incorporated


APPROVED AS TO FORM:

Grant Kidani, Esq.
Kidani Law Center
Attorneys for Investment
   Group LLC

STATE OF HAWAII                          )
                                         )  SS.
CITY AND COUNTY OF HONOLULU              )


     On this _9_ day of _November_ , 2003, before me

appeared _Randall Haskel_ , to me

personally known, who, being by me duly sworn, did say that

he/she is the _Vice President/Executive Director/General Counsel_ of UNITY HOUSE,

INCORPORATED, a Hawaii non-profit corporation, and that the

foregoing instrument was signed and sealed in behalf of said

corporation by authority of its Board of Directors, and the said

_he_ acknowledged said instrument to be

the free act and deed of said corporation.

                              _____
                              Notary Public, State of Hawaii
                              Theresa Anne K. Kong Kee
                              My commission expires: _1/29/05_

STATE OF HAWAII              )
                            )  SS.
CITY AND COUNTY OF HONOLULU  )


    On this  9th  day of  October        , 2003, before me

appeared     Rudy Tam                          , to me

personally known, who, being by me duly sworn, did say that

he/she is the    Manager          of INVESTMENT GROUP LLC,

a Hawaii limited liability company, and that the foregoing

instrument was signed and sealed in behalf of said limited

liability company by authority of its members, and the said

      he                acknowledged said instrument to be

the free act and deed of said limited liability company.

                              Notary Public, State of Hawaii
                              DEBORAH KAIO
                              My commission expires: 09/08/06

STATE OF HAWAII                    )
                                   )    SS.
CITY AND COUNTY OF HONOLULU        )


On this 13th day of October , 2003, before me
personally appeared Ivan M. Lui-Kwan, to me personally known,
who, being by me duly sworn, did acknowledge that he is the
Director of the Department of Budget and Fiscal Services, City
and County of Honolulu, a municipal corporation of the State of
Hawaii, and that he executed the foregoing instrument on behalf
of said municipal corporation as the free act and deed of said
municipal corporation.


Notary Public State of Hawaii

My commission expires: 03-03-2007
Karen L. Terry

# AMENDMENT AGREEMENT NUMBER 1
## Contract Number F62368
## SUBRECIPIENT AGREEMENT
### Community Development Block Grant (CDBG) Program

This AMENDMENT AGREEMENT NUMBER 1 ("**Agreement**") made this _22_day of _oct_ 2003 by and among the City and County of Honolulu, a municipal corporation of the State of Hawaii ("**City**"), whose principal place of business and mailing address is Honolulu Hale, 530 South King Street, Honolulu, Hawaii 96813; Unity House, Incorporated ("**Subrecipient**") a Hawaii nonprofit corporation, whose principal place of business and mail address of which is 444 Hobron Lane, PH 4B, Honolulu, Hawaii 96815; and Investment Group LLC ("**Group**"), a Hawaii limited liability company, whose principal place of business and mail address of which is 444 Hobron Lane, PH 4B, Honolulu, Hawaii 96815 .

**Whereas,** the City and the Subrecipient entered into Contract Number F62368, Subrecipient Agreement CDBG Program on April 30, 1998 ("**Subrecipient Agreement**").

**Whereas,** on _October 22,_ ____, 2003, the City, Subrecipient, and Group entered into a Settlement and Release Agreement ("**Settlement and Release Agreement**").

**Whereas,** under the Settlement and Release Agreement, Unity House was to return Program Income (as defined in the Settlement and Release Agreement) in the amount of $1,107,539.00 to the City by transferring the Program Income to Group which in turn is to purchase and acquire (and eventually develop and improve) the fee simple interest, the leasehold interest and improvements, and other property interests located at 45-683 Kamehameha Highway, Kaneohe, Hawaii, and identified by Tax Map Key: 4-5-049-022 (1) (collectively, the "**New Property**").

**Now therefore,** this Agreement amends the Subrecipient Agreement under Contract F62368 by authorizing the Subrecipient to use the $1,107,539 in CDBG Program Income generated under Contract F62368 for the purposes outlined and agreed to under a Settlement and Release Agreement, hereby, attached and made part of this Agreement.

**Now therefore,** as part of this Agreement the City and the Subrecipient agree to fulfill their respective obligations under the Settlement and Release Agreement, and agree to continue to fulfill their respective obligations under the Subrecipient Agreement.

**Now therefore,** to the extent possible and with respect to Group's involvement with the New Property, Group agrees to assume and fulfill the Subrecipient's obligations under the Subrecipient Agreement, provided however, this in no way releases the Subrecipient from such obligations.

EXHIBIT **B**

**Now therefore,** it is agreed that the City, Subrecipient and Group hereby indemnify each other from any liabilities per the Settlement and Release Agreement, and hereby agree to, ratify and confirm all terms and conditions of the Subrecipient Agreement not inconsistent with the terms and conditions of this Agreement, provided however, in the event of any conflict between the terms and conditions of this Agreement and of the Subrecipient Agreement, the terms and conditions of this Agreement shall control.

**THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THE FOREGOING AGREEMENT AND KNOW THE CONTENTS THEREOF AND AGREE TO SAME AS THEIR OWN FREE ACT AND DEED AND WITH THE ADVICE OF LEGAL COUNSEL.**

**IN WITNESS WHEREOF,** the parties hereto have caused these presents to be executed effective as of the day and year first written above.

**Unity House, Incorporated**

By: Anthony A. Rutledge
Its: _Pres._

Date: _10-22-2003_

**City and County of Honolulu**

By: Ivan M. Lui-Kwan
Director
Department of Budget and Fiscal Services
City and County of Honolulu
Date: OCT 23 2003

**Investment Group LLC**

By: Rudy L.K. Tam
Its: _MANAGER_
Date: _10-22-03_

2

CARLSMITH BALL LLP
STEVEN M. EGESDAL  4511-0
AS B Tower, Suite 2200
1001 Bishop Street
Honolulu, HI  96813
Tel No. 808.523.2500
Fax No. 808.523.0842

LAW OFFICES OF BROOK HART
A Law Corporation
BROOK HART  0723-0
333 Queen Street, Suite 610
Honolulu, Hawaii  96813
Telephone:  808.526.0811

Attorneys for Plaintiff
UNITY HOUSE, INCORPORATED, IN RECEIVERSHIP

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2006 JAN -6  PM 4: 05

H. CHING
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| UNITY HOUSE, INCORPORATED,<br>In Receivership,<br><br>            Plaintiff,<br><br>   vs.<br><br>RUDY L.K. TAM and INVESTMENT<br>GROUP, LLC, a Hawaii limited liability<br>company,<br><br>         Defendants. | CIVIL NO.  **05-1-2218-12 (BIA)**<br>(Other Non-Vehicle Tort)<br><br>FIRST AMENDED COMPLAINT FOR<br>INJUNCTIVE AND OTHER RELIEF;<br>EXHIBIT "A"; DEMAND FOR JURY<br>TRIAL; SUMMONS |

EXHIBIT 

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Comes now Plaintiff UNITY HOUSE, INCORPORATED, IN RECEIVERSHIP

(hereinafter referred to as **"Unity House"** or **"Plaintiff"**), and alleges and avers as follows:

### I.    INTRODUCTION

1.    This action alleges that defendant Rudy L. K. Tam (hereinafter **"Tam"**) held a

position of trust and confidence at Unity House.  By using monies controlled by Unity House to

I do hereby certify that this is a full, true and
correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

undertake a major investment on his own behalf that he rightly should have presented to Unity House, Tam usurped a corporate opportunity, breached his fiduciary duties and contractual obligations to Unity House, and was unjustly enriched.

2.      Defendant Investment Group, LLC, is a Hawaii limited liability company controlled by Tam. Tam used Investment Group, LLC as a vehicle to undertake the investment at issue in this lawsuit. As a beneficiary of Tam's unlawful actions, Investment Group, LLC has been unjustly enriched.

3.      This action seeks injunctive relief in the form of a constructive trust, restitution, and damages.

## II.    PARTIES

4.      Unity House is a non-profit organization incorporated in Hawaii. Initially funded by contributions from members of various local unions, Unity House has provided services to Hawaii's working people for over 50 years. Unity House's programs include, among other things, scholarships, financial assistance for childcare, and a senior center that provides classes and other activities for retirees. In order to maintain and maximize its assets, Unity House has regularly invested in real estate. In federal criminal proceedings, Unity House was placed in receivership on December 10, 2004. EG&G Technical Services, Inc. is the court-appointed receiver of Unity House and is currently overseeing Unity House's operations. A copy of the order appointing the receiver (**"Receiver Order"**) is attached hereto and incorporated by reference as Exhibit "A". This lawsuit is consistent with the terms of the Receivership Order, which charges the receiver with, among other things, making all reasonable business decisions on behalf of Unity House and maintaining and repatriating Unity House assets.

4825~1147-1360.5

5.    Tam is a resident of the City and County of Honolulu, Hawaii. From at least 1996 through 2004, he was employed by Unity House. He served on Unity House's Investment Committee and provided various services related to real estate and other investments. For these services, he was paid approximately $5,000 to $6,000 per month, plus various expenses and bonuses. Unity House terminated Tam on or about January 19, 2005.

6.    Investment Group, LLC is a Hawaii manager-managed limited liability company organized on or about January 11, 1999, under Hawaii's Uniform Limited Liability Company Act (Haw. Rev. Stat. Ch. 428). Its office and principal place of business is in Honolulu, Hawaii. Tam is and has been Investment Group, LLC's sole member and manager. Investment Group, LLC is an alter ego of Tam. Investment Group, LLC's registered mailing address is the same as Unity House's: 1701 Ala Wai Boulevard, Honolulu, Hawaii, 96815.

### III.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to Haw. Rev. Stat. § 603-21.5(a)(3).

8.    Venue is proper in this circuit under Haw. Rev. Stat. § 603-36(5) because Tam resides in the First Circuit, Investment Group, LLC is headquartered in the First Circuit, and the claim for relief arose in the First Circuit.

### IV.    ALLEGATIONS COMMON TO ALL COUNTS

A.    <u>Tam's Relationship to Unity House</u>

9.    Tam, or an organization affiliated with and controlled by Tam, was hired by Unity House, or an organization affiliated with and controlled by Unity House, on or before March 1, 1996. Tam was hired to provide various services to Unity House, including advising Unity House in its real estate investments and other investments. As part of his services to Unity

3

House, Tam served on Unity House's Investment Committee. Tam occupied a position of trust and confidence with respect to Unity House.

10.    Tam was employed by Unity House for all or most of the period from at least 1996 until or about January 19, 2005, when he was terminated. For all or part of this time, "Consulting Agreements" existed between Tam (or a Tam-controlled entity) and Unity House (or a Unity House-controlled entity), which purport to establish the terms of the relationship between Tam (or the relevant Tam-controlled entity) and Unity House (or the relevant Unity House-controlled entity). In or about 2003, Tam had a contractual or other relationship with Unity House under which he continued to provide services to, and receive compensation from, Unity House.

B.    The Lokahi Greens Development

11.    In or about April 1998, Unity House contracted with the City and County of Honolulu (the "City") to purchase certain property in Ewa Villages, Hawaii. Unity House planned to develop this land for residential use. The development was and is known as Lokahi Greens. For some period currently unknown, Tam managed the Lokahi Greens project for Unity House.

12.    The purchase of property for the Lokahi Greens development was to take place in two phases. The first phase ("Phase I") was consummated in 1998, and consisted of 96 housing lots. Unity House's $9.2 million Phase I purchase was funded in part by $7.3 million provided by the United States Department of Housing and Urban Development ("HUD"). These funds were part of HUD's Community Development Block Grant ("CDBG") program. HUD did not directly grant the CDBG funds to Unity House; rather, HUD granted the CDBG funds to the City, which, in turn, provided them to Unity House. The use of the CDBG funds was subject to

4

certain restrictions imposed by the CDBG program. The 96 lots of Phase I, unlike the 57 lots that were to comprise the second phase of the purchase ("**Phase II**"), were to be low-to-moderate income housing. Unlike the Phase I purchase, the Phase II purchase was not to have been funded with CDBG funds.

13.     The Phase II purchase was never consummated. The City alleged that Unity House's failure to complete the Phase II purchase was a breach of contract. Unity House disputed this claim. On or about November 29, 2000, the City sued Unity House for its failure to complete the Phase II purchase.

14.     Unity House developed and sold the 96 lots that were purchased as part of Phase I. Under CDBG program regulations, a certain portion of the proceeds from those sales was to have been returned to the CDBG program. Unity House allegedly did not return any of the proceeds to the CDBG program.

15.     At some date currently unknown but prior to April 2002, HUD conducted an audit that detected approximately $1.1 million in proceeds from the sale of the Phase I lots that should have been put back into the CDBG program (the "**program income**"). HUD demanded that the City repay this program income. HUD threatened the City with the loss of additional HUD monies if the City failed to collect the program income from Unity House or otherwise return the program income.

C.     Settlement Negotiations

16.     At some point currently unknown, Unity House and the City began settlement negotiations intended to resolve the dispute over Phase II as well as the issue of the missing program income. Tam was present at some or all of the relevant negotiation meetings in his capacity as a representative of Unity House.

5

17.     Rather than repay the program income directly to the City, Unity House proposed using the program income in another project that was approved under the CDBG program. This option was intended to satisfy HUD's demand for the return of the program income. This option allowed Unity House to reinvest the program income in a project in Unity House's name.

18.     At these settlement negotiations, Tam suggested using the program income to purchase and develop property located, at least in part, at 45-677 Kamehameha Highway, Kaneohe, Hawaii, and known as the Val Hala Apartments. This project was eligible under the CDBG program and therefore satisfied HUD's concerns regarding proper use of the program income. But Tam did not offer the Val Hala Apartments project to Unity House such that Unity House might undertake the project in its own name. Instead, Tam caused the Val Hala Apartments project to be undertaken in the name of his own company, Investment Group, LLC.

19.     In or about 2003, the City, Unity House, and Investment Group, LLC signed a Settlement and Release Agreement (the **"Settlement Agreement"**).

20.     The Settlement Agreement resolved the City's claims against Unity House relating to the Phase II purchase.

21.     The Settlement Agreement also provided that Unity House would "return" the program income to the City by transferring it to Investment Group, LLC for use in the Val Hala Apartments project. No vote of Unity House's members was taken to approve this transaction.

22.     Pursuant to the terms of the Settlement Agreement, Tam and Investment Group, LLC received approximately $1.1 million in program income from Unity House for use in the Val Hala Apartments project. Tam and Investment Group, LLC never gave Unity House any interest in the Val Hala Apartments project, despite using Unity House's monies to fund the Val Hala Apartments project, and Unity House therefore never had any interest in the Val Hala

Apartments project. Unity House also has never received any income or profits from the Val

Hala Apartments project.

## V.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Usurpation of Corporate Opportunity
### (Against Defendant Tam)

23.    Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 22 of this

Complaint as if fully set forth herein.

24.    At all relevant times, Tam occupied a position of trust and confidence with

respect to Unity House. By virtue of this position, Tam owed Unity House a duty to offer

corporate opportunities to Unity House.

25.    Tam never offered the Val Hala Apartments project to Unity House such that

Unity House might undertake the project in its own name.

26.    Unity House members never consented to Tam's acquisition of the Val Hala

Apartments project.

27.    At the time of the Settlement Agreement, Unity House was financially able to

undertake the Val Hala Apartments project.

28.    At the time of the Settlement Agreement, the Val Hala Apartments project was in

the line of Unity House's business.

29.    At the time of the Settlement Agreement, Unity House had an interest or

reasonable expectancy in the Val Hala Apartments project.

30.    By failing to offer the Val Hala Apartments project to Unity House and instead

undertaking it in the name of his own company, Investment Group, LLC, Tam usurped a

corporate opportunity.

31.    Plaintiff is therefore entitled to the relief requested below.

4825-1147-1360.5

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duties
### (Against Defendant Tam)

32.    Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 31 of this Complaint as if fully set forth herein.

33.    At all relevant times, Tam occupied a position of trust and confidence with respect to Unity House.

34.    At all relevant times, Tam, by virtue of his position of trust and confidence, owed fiduciary duties to Unity House.

35.    By failing to offer the Val Hala Apartments project to Unity House and undertaking the project in the name of his own company, Investment Group, LLC, Tam placed his personal interests above those of Unity House.

36.    Tam's acts constitute a breach of his fiduciary duties, particularly his duty of loyalty to Unity House.

37.    Tam forfeits any right to the compensation Plaintiff paid Tam during the entire period of Tam's breach of Tam's fiduciary duties to Plaintiff, and Plaintiff is entitled to the disgorgement of that compensation from Tam, as restitution or damages in an amount to be proven at trial.

38.    Plaintiff is therefore entitled to the relief requested below.

## THIRD CAUSE OF ACTION
### Breach of Contract
### (Against Defendant Tam)

39.    Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 38 of this Complaint as if fully set forth herein.

40.    During the relevant time period, Tam provided services for Plaintiff, including advising Plaintiff with respect to real estate transactions.  In exchange, Plaintiff provided

4825-1147-1360.5

compensation to Tam. During the relevant time period, there was no indication that Tam would provide his services without compensation.

41.    If no written contract existed between the parties during the relevant time period, Plaintiff and Tam were nevertheless mutually obligated under a contract implied in fact under the circumstances as understood by the parties.

42.    Under the contract that existed between the parties, Plaintiff was entitled to rely on and trust Tam's advice.

43.    Under the contract that existed between the parties, Tam was obligated to offer corporate opportunities to Unity House.

44.    Under the contract that existed between the parties, Tam was not entitled to put his own interests above those of Plaintiff in his dealings with Plaintiff.

45.    By failing to offer the Val Hala Apartments project to Unity House and undertaking the project in the name of his own company, Investment Group, LLC, Tam breached the contract that existed between Plaintiff and Tam.

46.    Plaintiff is therefore entitled to the relief requested below.

### FOURTH CAUSE OF ACTION
### Breach of Duty of Good Faith and Fair Dealing
### (Against Defendant Tam)

47.    Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 46 of this Complaint as if fully set forth herein.

48.    Under controlling Hawaii law, there is implied in every contract a duty of good faith and fair dealing. RESTATEMENT (SECOND) OF CONTRACTS § 205. Tam's duty of good faith and fair dealing was implied in Plaintiff's employment/agency agreement with Tam.

49.    Tam usurped a corporate opportunity and used Tam's position with Plaintiff to divert profits from Plaintiff to Tam through Investment Group, LLC. Tam's acts and omissions

9

were not in good faith or with fair dealing with Plaintiff. Consequently, Tam has breached his

duty of good faith and fair dealing under Tam's employment/agency agreement with Plaintiff.

50.    As a direct proximate result of that breach of the duty of good faith and fair

dealing, Plaintiff has incurred substantial damages, in addition to those addressed above, in an

amount to be shown at trial.

<div align="center">

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment/Restitution/Disgorgement/Constructive Trust**
**(Against Defendants Tam and Investment Group, LLC)**

</div>

51.    Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 50 of this

Complaint as if fully set forth herein.

52.    Plaintiff is entitled to restitution and disgorgement concerning all profits Tam

derived, took, realized, or received concerning the Val Hala Apartments project: (a) Tam was an

agent and fiduciary of Plaintiff, with a duty of loyalty to Plaintiff; (b) Tam's duty of loyalty to

Plaintiff prohibited Tam's usurpation of the corporate opportunity of the Val Hala Apartments

project; (c) Tam failed to disclose that corporate opportunity to the Plaintiff (or its board),

however, and Tam failed to explain that corporate opportunity to Plaintiff or tender it to Plaintiff;

and (d) instead, Tam usurped and took advantage of that corporate opportunity for himself,

through his wholly-owned company and alter ego Investment Group, LLC.

53.    Plaintiff is entitled to reimbursement for at least the amount that Tam and

Investment Group, LLC derived, took, realized, or received concerning the Val Hala Apartments

project, plus interest. Retention by Tam and Investment Group, LLC would be unfair or

constitute an unjust enrichment, and Tam and Investment Group, LLC must disgorge those

profits made at the expense of Plaintiff as Tam's principal. Plaintiff is entitled to recover at least

those profits, in addition to other damages to be proven at trial, as restitution, disgorgement, or

<div align="center">10</div>

both, for all profits Tam derived, took, realized, or received from that corporate opportunity wrongfully usurped by Tam from Plaintiff.

54.     By continuing to retain the amounts that Tam and Investment Group, LLC derived, took, realized, or received concerning the Val Hala Apartments project, Tam and Investment Group, LLC have been unjustly enriched and continue to be unjustly enriched, which has resulted in an unjust windfall for Tam and Investment Group, LLC, at the expense of Plaintiff.

55.     Tam and Investment Group, LLC thereby have received unjustified benefits to the detriment of Plaintiff.  Tam and Investment Group, LLC should be deemed to hold the benefits wrongfully obtained in constructive trust for Plaintiff, and to have an equitable duty to return those benefits to Plaintiff, including without limitation conveying to Plaintiff ownership/legal title to the Val Hala Apartments project.  The Val Hala Apartments project rightfully belongs to Plaintiff, whose monies Tam and Investment Group, LLC used to fund the Val Hala Apartments project.

56.     Plaintiff is entitled to a declaration that Tam and Investment Group, LLC hold all benefits and funds derived, taken, or received by them from the Val Hala Apartments project in constructive trust for the benefit of Plaintiff, and the imposition of that constructive trust upon those benefits and funds, including without limitation the Val Hala Apartments project itself.

57.     Specifically, and non-exclusively, the constructive trust should include, at least, ownership/legal title to the Val Hala Apartments project and the amounts that Tam and Investment Group, LLC derived, took, realized, or received concerning the Val Hala Apartments project.

58.     The conduct of Tam and Investment Group, LLC is contrary to the fundamental principles of justice or equity and good conscience, and Tam and Investment Group, LLC should be ordered to make restitution, in an amount to be proven at trial, and be ordered to compensate Plaintiff for the value of its unjust retention of benefits.

59.     Through Tam's unlawful acts described above, Tam has been unjustly enriched to the detriment of Plaintiff.

60.     Through Tam's unlawful acts described above, Investment Group, LLC has been unjustly enriched to the detriment of Plaintiff.

61.     As Tam's alter ego, Investment Group, LLC is not an innocent third party with respect to Tam's unlawful acts described above.

62.     Plaintiff is therefore entitled to the relief requested below.

<div align="center">

**SIXTH CAUSE OF ACTION**
**Piercing the Limited Liability Company Veil**
**(Against Defendants Tam and Investment Group, LLC)**

</div>

63.     Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 62 of this Complaint as if fully set forth herein.

64.     Tam has so commingled his personal business with, and his personal control of, Investment Group, LLC, that the limited liability company fiction for Investment Group, LLC should be completely disregarded for Investment Group, LLC concerning Tam.

65.     Tam individually is the alter ego of Investment Group, LLC, and Tam has used and is attempting to use the limited liability company fiction to insulate himself from personal liability, hide or secrete assets, or insulate himself from Plaintiff's rightful return of funds that Tam wrongfully derived, took, realized or received from the Val Hala Apartments project that equitably should have gone, and therefore fairly belong, to Plaintiff, which funds Tam and Investment Group, LLC have diverted, converted, or misappropriated to themselves.

4825~1147-1360.5

66. Plaintiff is entitled to a declaration that the limited liability company veil of Investment Group, LLC is to be pierced concerning Tam, and that Tam is to be held personally liable to Plaintiff concerning the Val Hala Apartments project for any and all restitution owed to Plaintiff, or damages suffered by Plaintiff, as prayed for in this complaint.

### SEVENTH CAUSE OF ACTION
**Accounting**
**(Against Defendants Tam and Investment Group, LLC)**

67. Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 66 of this Complaint as if fully set forth herein.

68. Plaintiff is entitled to an accounting from Tam and Investment Group, LLC concerning all profits Tam and Investment Group, LLC derived, took, realized or received concerning the Val Hala Apartments project.

### EIGHTH CAUSE OF ACTION
**Punitive Damages**
**(Against Defendants Tam and Investment Group, LLC)**

69. Plaintiff realleges and incorporates herein by reference ¶¶ 1 through 68 of this Complaint as if fully set forth herein.

70. Tam and Investment Group, LLC usurped a corporate opportunity of Plaintiff and diverted profits therefrom for their own use, benefit, and profit.

71. Tam and Investment Group, LLC acted grossly negligently, recklessly, wantonly, oppressively, and with a conscious disregard for the consequences of its and his actions to Plaintiff, his principal and fiduciary.

72. Punitive damages are especially appropriate for a breach of the duty of loyalty, including, as here, the usurpation of a corporate opportunity by a fiduciary and the hidden diversion of profits by an agent away from his principal.

4825-1147-1360.5

73.    As a direct and proximate result of Tam's and Investment Group, LLC's bad faith, breach of fiduciary duty, and otherwise grossly negligent, reckless, wanton, and oppressive acts, Plaintiff has sustained and continues to sustain damages, and Plaintiff therefore is entitled to substantial punitive damages in an amount to be determined at trial.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Tam and Investment Group, LLC, as follows:

(a)    For general and special damages in amounts to be proven at trial;

(b)    For punitive and exemplary damages in an amount to be proven at trial, consonant with constitutional limitations;

(c)    For equitable relief as requested herein, including without limitation restitution, constructive trust (including without limitation an order requiring Defendants Tam and Investment Group, LLC to convey ownership/legal title to Plaintiff to the Val Hala Apartments project), an accounting, and piercing the company veil;

(d)    For cost of trial and all reasonable attorney's fees and costs;

(e)    For pre-judgment interest and post-judgment interest; and

(f)    For such further relief as the court deems just and proper.

DATED:  Honolulu, Hawaii, January 6, 2005.


STEVEN M. EGESDAL
BROOK HART

Attorneys for Plaintiff
UNITY HOUSE, INCORPORATED,
IN RECEIVERSHIP

14

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| UNITY HOUSE, INCORPORATED, In Receivership, | CIVIL NO. **05-1-2218-12 (BIA)** (Other Non-Vehicle Tort) |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. | |
| RUDY L.K. TAM and INVESTMENT GROUP, LLC, a Hawaii limited liability company, | |
| Defendants. | |

## DEMAND FOR JURY TRIAL

Comes now Plaintiff UNITY HOUSE, INCORPORATED, IN RECEIVERSHIP, by and through its attorneys, and hereby demands a trial by jury.

DATED:  Honolulu, Hawaii, January 6, 2005.

STEVEN M. EGESDAL
BROOK HART

Attorneys for Plaintiff
UNITY HOUSE, INCORPORATED,
IN RECEIVERSHIP

FILED IN THE
UNITED STATES DISTRICT COU
DISTRICT OF HAWAII

DEC 1 4 2004

at 3 o'clock and 20 min. 4
WALTER A.Y.H. CHINN, CLE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00438-DAE-BMK |
| | ) | |
| Plaintiff, | ) | ORDER UNSEALING |
| | ) | POST-INDICTMENT |
| vs. | ) | RESTRAINING ORDER DATED |
| | ) | DECEMBER 10, 2004, |
| AARON A. RUTLEDGE,      (01) | ) | APPLICATION, AND |
| ANTHONY A. RUTLEDGE, SR. (02) | ) | ATTACHMENTS A & B. |
| a/k/a "TONY" RUTLEDGE, | ) | |
| STAR-BEACHBOYS, INC.,    (03) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER UNSEALING POST-INDICTMENT RESTRAINING ORDER DATED
DECEMBER 10, 2004, APPLICATION AND ATTACHMENTS A & B

        The United States of America, by and through

its counsel, has made an ex-parte application to immediately

unseal the Post-Indictment Restraining Order Dated December 10,

2004, Application and Attachments A & B.  This Order is requested

and hereby GRANTED to supplement the Court's previous oral

permission at the time of signing to unseal the documents

referenced above as required to execute the Court's Order.

The Declaration of Special Agent Greg Miki and attached exhibits

shall remain under seal until further order of the Court.

        IT IS SO ORDERED.

        DATED: December 14, 2004, in Honolulu, Hawaii.


                        SAMUEL P. KING
                        _____
                        SAMUEL P. KING, SR.
                        Senior United States District Judge
                        District of Hawaii


United States v. Aaron A. Rutledge, Anthony A. Rutledge, Sr. &
Star-Beachboys, Inc., CR. No. 02-00438-DAE-BMK; ORDER UNSEALING
POST-INDICTMENT RESTRAINING ORDER DATED DECEMBER 10, 2004,
APPLICATION AND ATTACHMENTS A & B.

# EXHIBIT A

CERTIFIED A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii

FILED IN THE
UNITED STATES DISTRICT CO
DISTRICT OF HAWAII

3 DEC 1 0 2004

at ___ o'clock and ___ min.
WALTER A. Y. H. CHINN, CLE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,           )    CR. NO. 02-00438-DAE-BMK
                                    )
                Plaintiff,          )
                                    )    EX-PARTE POST-INDICTMENT
        vs.                         )    INDICTMENT RESTRAINING ORDER
                                    )
AARON A. RUTLEDGE,        (01)  )
ANTHONY A. RUTLEDGE, SR.  (02)  )
 a/k/a "TONY" RUTLEDGE,             )
STAR-BEACHBOYS, INC.,     (03)  )
                                    )
                Defendants.         )
_____)

## EX-PARTE POST-INDICTMENT RESTRAINING ORDER

The United States Government has made an *ex-parte*

application to this Court, pursuant to 21 U.S.C. § 853(e)(1)(A),

for a restraining order to immediately preserve the availability

of certain property that is subject to forfeiture in the above-

styled criminal action and which appears to be under imminent

threat of being made permanently unavailable for these

proceedings through the defendants' control of the entity Unity

House, Inc. with probable cause to believe that the entity has

been and continues to be operated as an alter ego corporation of

the defendants ANTHONY A. RUTLEDGE, SR. and his son, defendant

AARON A. RUTLEDGE contrary to the best interests of the

membership and beneficiaries of Unity House, Inc. and under

threat of immediate and irreparable harm to the assets identified

in this application by the United States.

1

Accordingly, upon consideration of the United States'
application and the verified materials submitted in support
thereof, and the sealed Third Superseding Indictment containing
the Grand Jury's findings of probable cause against defendants
ANTHONY A. RUTLEDGE, SR., AARON A. RUTLEDGE, and others known and
unknown to the Grand Jury, of an on-going scheme to defraud the
members and beneficiaries of the non-profit entity known as Unity
House, Inc. and its related entities, and further finding
probable cause to believe that the current directors and
management of Unity House, Inc. are conflicted and incapable of
taking corrective actions to preserve the subject property from
the  scheme and those who have a fiduciary duty to protect the
assets, the Court hereby finds the following:

    1.  That a Grand Jury of this District has returned a
sealed Third Superseding Indictment against defendants ANTHONY A.
RUTLEDGE, SR., AARON A. RUTLEDGE, charging them with mail and
wire fraud, and conspiracy to commit mail and wire fraud, in
violation of Title 18 United State Code, Sections 1341, 1341,
1346, and 371; Title 29, United States Code, Section 186; and a
conspiracy to defraud the United States Department of Treasury,
Internal Revenue Service.  See United States v. Anthony A.
Rutledge, Sr. et al., CR. No. 02-00438-DAE-BMK.  As part of said
Third Superseding Indictment, the United States is seeking the
criminal forfeiture under 18 U.S.C. §§ 982, 981(a)(1)(C) and 28

U.S.C. § 2461(c) of certain property in which each identified
defendant holds an interest, as detailed in Attachments A
& B to the United States' Ex-parte Application for a Post-
Indictment Restraining Order and incorporated herein.

    2.  That the Grand Jury's Third Superseding Indictment
of defendants ANTHONY A. RUTLEDGE, SR. and AARON A. RUTLEDGE,
together with the Grand Jury's finding of probable cause for
forfeiture, as well as the affidavit of Internal Revenue Service
Special Agent Greg Miki, which specifically identifies property
as being subject to forfeiture under 18 U.S.C. §§ 982,
981(a)(1)(C) and 28 U.S.C. § 2461(c), establishes sufficient
probable cause for the issuance of this restraining Order and
justification for taking the identified entity and related
property under the immediate supervision of this Court pursuant
to the All Writs Act, 28 U.S.C. § 1651(a).

    3.  That in the event ANTHONY A. RUTLEDGE, SR. and
AARON A. RUTLEDGE are convicted of the charges alleged in said
Superseding Indictment, the subject property would be subject to
forfeiture under 18 U.S.C. §§ 982, 981(a)(1)(C) and 28 U.S.C. §
2461(c). The properties and monies are under the present control
of the defendants by virtue of their control over the business
affairs of Unity House, Inc. and the elimination of the
membership of Unity House, Inc. as required to receive the
benefits of its tax exempt status.

4.  That there exists an immediate need to preserve the availability of the subject properties under threat that some or all of the identified assets will be sold and/or relocated beyond the reach of the United States Government and the jurisdiction of this Court absent the immediate execution of this Order that outweighs any and all hardships on any party against whom this Order is to be entered.

5.  That any third party claims to the subject property may be properly brought and resolved in ancillary proceedings conducted by this Court following the execution of a Preliminary Order of Forfeiture in accordance with the provisions of federal forfeiture law.

THEREFORE, IT IS FURTHER ORDERED AND DECREED:

THAT effective immediately, ANTHONY A. RUTLEDGE, SR., AARON A. RUTLEDGE, their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, including but not limited to the directors and management of Unity House, Inc., all of its related entities, and those persons, financial institutions, or other entities who assert a claim over any interest, or assert any legal claim or control over the subject property on behalf of Unity House and all of its related entities, are hereby,

RESTRAINED, ENJOINED, AND PROHIBITED, without prior approval of this Court and upon notice to the United States and

4

an opportunity for the United States to be heard, from attempting or completing any contract or taking any action that would affect the availability, marketability or value of said property or legal interest, including but not limited to selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, or in any way diminishing the value of, all or any part of their interest, direct or indirect, in the property and monetary interests identified below and in the attachments A & B:

| 1 | Currents Assets | | |
|---|---|---|---|
| 2 | First Hawaiian Bank Account - Acct. #01-055798, 05-055169, 88-021282 | $1,913,132.19 | |
| 3 | Petty Cash Fund | $2,150.00 | |
| 4 | Paine Webber - Acct #IJ 60076 ST | $4,233,242.22 | |
| 5 | First Hawaiian Bank Nasdaq 100 - Acct. #73-2351-03-6 | $1,494,872.20 | |
| 6 | Pacifiic Centrury Trust-Unity Reserve Acct #140024803 | $180,120.02 | |
| 7 | Pacific Century Trust-Bidwell Large Cap Acct. #140025800 | $4,751,923.59 | |
| 8 | Pacific Century Trust-Granite Investment Advisors (Equity) Acct. #140028150 | $5,784,577.40 | |
| 9 | Receivable - Innovative Financial Services | $(2,486,594.13) | |
| 10 | Receivable - Hale Lokahi | $493,095.13 | |
| 11 | Receivable - Lokahi Greens in Ewa | $(209,560.68) | |

| | | | |
|---|---|---|---|
| 12 | Receivable - Kapiolani 720 (NCR Building) | $5,368,072.97 | |
| 13 | Receivable - Lokahi Trovare in Ewa | $(101,134.79) | |
| 14 | Receivable - Others | $37,184.00 | |
| 15 | Receivable - Employees | $5,700.00 | |
| 16 | Acct/Rec - Ceatech | $2,622.16 | |
| 17 | Note Rec. - Heavenly Road Project | $537,303.00 | |
| 18 | Note Rec. - Romeo Mindo | $40,000.00 | |
| 19 | Note Rec. - Grant Kidani | $50,000.00 | |
| 20 | Note Rec. - P. Noga | $1,500.00 | |
| 21 | Note Rec. - Hawaii Hospital and Healthcare Workers Union | $35,000.00 | |
| 22 | Note Rec. - Chabad Lubavitch | $222,500.00 | |
| 23 | Prepaid Insurance | $57,647.92 | |
| 24 | Prepaid Expense | $392.00 | |
| 25 | Travel Deposits - Retirees | $(3,088.00) | |
| 26 | Acct. Rec. - Kornhauser | $52,657.47 | |
| 27 | Investment in Hale Lokahi Ltd. | $2,285,878.79 | |
| 28 | Investment in Kapiolani 720 | $407,575.40 | |
| 29 | Investment in Oceanside | $(84,820.50) | |
| 30 | Hoana Investment LLC | $28,514.00 | |
| 31 | HI FF Cook Book | $1,000,000.00 | |
| 32 | Investment in Legends of Heavenly Road | $55,208.35 | |
| 33 | Investment in Ceatech | $125,000.00 | |
| 34 | | $3,046,350.00 | |
| 35 | Total Current Assets | | $29,307,020.71 |
| 36 | **Fixed Assets** | | |
| 37 | Land - Punaluu | $4,023,188.16 | |
| 38 | Marks Estate | $2,655,895.09 | |
| 39 | Furniture & Equipment | $272,838.88 | |
| 40 | Equipment - Retiree Center | $1,505.09 | |
| 41 | Office Improvements | $96,291.51 | |
| 42 | Office Improvements - 3rd Floor | $33,315.43 | |

| | | | |
|---|---|---|---|
| 43 | Office Improvements - 307 Kamani Street | $38,651.20 | |
| 44 | 1777 Ala Moana Blvd. condo | $490,200.64 | |
| 45 | 1777 Ala Moana Blvd. condo renovation | $27,470.80 | |
| 46 | Punaluu Condo BL-202 | $20,774.47 | |
| 47 | Punaluu Condo renovation | $16,265.38 | |
| 48 | 1701 Ala Wai Property | $4,626,677.81 | |
| 49 | 1701 Ala Wai Property - Improvements | $1,286,901.31 | |
| 50 | 1701 Ala Wai Property - F & E | $95,024.06 | |
| 51 | Accum. Depreciation | $(883,195.75) | |
| | | | |
| 52 | Total Fixed Assets | | $12,801,804.08 |
| 53 | Other Assets | | |
| 54 | Deposits - Property Leases | $5,106.34 | |
| 55 | Settlement - ring | $50,000.00 | |
| 56 | Settlement - Morgan Dollars | $520.00 | |
| | | | |
| 57 | Total Other Assets | | $55,626.34 |
| | | | |
| 58 | Total Assets | | $42,164,451.13 |

IT IS FURTHER ORDERED that the Internal Revenue Service, and/or EG & G Technical Services, Inc., and their authorized agents and representatives, shall seize and take custody of the identified properties and monetary interests and maintain them in their custody and control until further order of this Court.

IT IS FURTHER ORDERED that all occupants of the identified real properties, except third-party tenants with existing valid written leases, shall vacate the real properties and surrender possession thereof to the Internal Revenue Service,

and/or EG & G Technical Services, Inc., and their authorized
agents and representatives, and said occupants shall, immediately
upon execution of this Order, remove any personal possessions not
subject to forfeiture unless, in the sole discretion of the
Internal Revenue Service, and/or EG & G Technical Services, Inc.,
and their authorized agents and representatives, the occupants
immediately execute an occupany agreement in a form satisfactory
to the Internal Revenue Service, and/or EG & G Technical
Services, Inc., and their authorized agents and representatives,
pending final resolution of this forfeiture proceeding.  Any
existing valid written leases shall remain in full force and
effect during their term, and any agreed extensions thereof, and
shall be recognized by the Internal Revenue Service, and/or EG &
G Technical Services, Inc., and their authorized agents and
representatives.  Rental payments shall be made to the Internal
Revenue Service, and/or EG & G Technical Services, Inc., and
their authorized agents and representatives, instead of the prior
owners.

      IT IS FURTHER ORDERED that the Internal Revenue
Service, and/or EG & G Technical Services, Inc., and their
authorized agents and representatives, may be accompanied by
federal, state, or local law enforcement officers to assist in
the execution of this Order, and shall take all reasonable
business decisions, including the ability to retain or fire any

and all employees and consultants, terminate any or all contracts, change locks, collect receivables, prevent the transfer of any and all real property, monies, investments and any other interests subject to the restraining order, and make timely payment of all mortgage payments, and insurance, utilities, taxes, and assessments until further order of this Court. The United States is permitted to enter said real properties to videotape conditions in order to verify the conditions and that said properties are being well maintained.

IT IS FURTHER ORDERED that any financial institutions holding any accounts subject to this Order shall take no offsets against such accounts. They shall continue to credit any deposits, interest, dividends, or other credits to such accounts in the normal course of business, and such deposits, interest, dividends, and other credits shall be subject to this Order. In addition, upon receiving notice of this Order, each financial institution shall promptly inform the Government as to the account balances at the time of notice, and shall thereafter supplement such information by reporting to the Government any changes to the accounts, and by responding promptly to requests by the Government for information on the accounts' current status.

IT IS FURTHER ORDERED that any financial institutions holding mortgages on real properties subject to this Order shall

9

respond promptly to requests by the Internal Revenue Service, and/or EG & G Technical Services, Inc., and their authorized agents and representatives, for information on said mortgages' current status.

IT IS FURTHER ORDERED that the Internal Revenue Service, and/or EG & G Technical Services, Inc., and their authorized agents and representatives, shall hire a real estate appraiser and have each of the identified real properties and interests appraised to determine fair market value of the properties and retain the services of any necessary resources to protect and maintain the identified properties until further order of the Court.

IT IS FURTHER ORDERED that the United States or any Subject of this Order may seek modifications of this Order if it is deemed necessary by them to preserve their interest in the subject property.

IT IS FURTHER ORDERED that the United States Marshal or his designee shall promptly serve a copy of this Restraining Order upon ANTHONY A. RUTLEDGE, SR., AARON A. RUTLEDGE, and all individuals claiming to represent Unity House and the interests identified above as possessing the property listed, escort all individuals from the premises with only their personal items, permitting no documents, records, files or any property belonging to Unity House, Inc. and its related entities from being removed

10

from the properties, and shall thereafter make a return thereon reflecting the date and time of service.

IT IS FURTHER ORDERED that the Internal Revenue Service, and/or EG & G Technical Services, Inc., and their authorized agents and representatives, shall custody and possession of the identified properties and monetary interests on behalf of this Court, including any known or unknown safe deposit boxes, bank accounts, investments and properties in which Unity House has an interest and shall maintain such interests in their custody and control until further order of this Court.

IT IS FURTHER ORDERED the Internal Revenue Service, and/or EG & G Technical Services, Inc., and their authorized agents and representatives, shall have the sole power and discretion to retain or terminate legal services currently retained or being paid by Unity House, Inc. or any of its related entities, and shall attempt to immediately collect unpaid receivables, repatriate assets, or take any other action until further order of this Court.

Upon application of the United States, and pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the Court shall issue any order necessary to effectuate and prevent the frustration of the execution of this Order.

11

THIS RESTRAINING ORDER shall remain in full force and effect until further order of this Court.

IT IS SO ORDERED.

DATED: December ___10___, 2004, at Honolulu, Hawaii.

SAMUEL P. KING

SAMUEL P. KING, SR.
Senior United States District Judge
District of Hawaii

UNITED STATES v. AARON A. RUTLEDGE, ANTHONY A. RUTLEDGE, SR. a/k/a "Tony" RUTLEDGE, & STAR-BEACHBOYS, INC., CR. No. 02-00438-DAE-BMK; EX-PARTE POST-INDICTMENT RESTRAINING ORDER.

12

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| UNITY HOUSE, INCORPORATED,<br>In Receivership,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>RUDY L.K. TAM and INVESTMENT<br>GROUP, LLC, a Hawaii limited liability<br>company,<br><br>　　　　Defendants. | CIVIL NO. _____<br>(Other Non-Vehicle Tort)<br><br>DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Comes now Plaintiff UNITY HOUSE, INCORPORATED, IN RECEIVERSHIP, by and through its attorneys, and hereby demands a trial by jury.

DATED: Honolulu, Hawaii, December 14, 2005.

_____
STEVEN M. EGESDAL
BROOK HART

Attorneys for Plaintiff
UNITY HOUSE, INCORPORATED,
IN RECEIVERSHIP

4825-1147-1360.4

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| UNITY HOUSE, INCORPORATED,<br>In Receivership,<br><br>    Plaintiff,<br><br>  vs.<br><br>RUDY L.K. TAM and INVESTMENT<br>GROUP, LLC, a Hawaii limited liability<br>company,<br><br>    Defendants. | CIVIL NO. **05-1-2218-12 (BIA)**<br>(Other Non-Vehicle Tort)<br><br>SUMMONS |

**SUMMONS**

STATE OF HAWAII

TO:    THE ABOVE-NAMED DEFENDANTS RUDY L. K. TAM
       AND INVESTMENT GROUP, LLC:

    You are hereby summoned and required to serve upon THE LAW OFFICES OF BROOK

HART and CARLSMITH BALL, LLP, attorneys for Plaintiff UNITY HOUSE,

INCORPORATED, IN RECEIVERSHIP, whose address is 333 Queen Street, Suite 610,

Honolulu, Hawaii, 96813, an answer to the First Amended Complaint which is herewith served

upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day

of service.  If you fail to do so, judgment by default will be taken against you for the relief

demanded in the First Amended Complaint.

    This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on

premises not open to the general public, unless a judge of the above-entitled court permits, in

writing on this summons, personal delivery during those hours.

4825-1147-1360.5

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, _____ JAN 6  2006 ___ .

H. CHING

SEAL

_____
CLERK OF THE ABOVE-ENTITLED COURT

# KIDANI LAW CENTER

Attorneys at Law · A Law Corporation                                                    Honolulu

May 5, 2006

*Via Fax 523-0842 & U.S. Mail*
Steven Egesdal, Esq.
Carlsmith Ball LLP
ASB Tower, Ste. 2200
1001 Bishop St.
Honolulu, HI 96813

Re:    Unity House Inc. v. Rudy Tam, et. al.
       Civil No.:    05-1-2218-12 (BIA)
       Our File:     2005210

Dear Mr. Egesdal:

        We represent the interests of Rudy Tam and Investment Group, LLC in
the above-entitled matter. We request your cooperation in keeping the property located,
at least in part, at 45-677 Kamehameha Hwy, Kaneohe, Hawaii, and known as the Val
Hala Apartments ("Val Hala Apartments") in livable condition.

        Prior to your lawsuit, the Val Hala Apartments were undergoing
renovations to correct structural and safety problems. Basically, the salt air corroded one
of the two stairwells which then collapsed making it impassable. Consequently, the
tenants of the Val Hala Apartments currently only have one stairwell to access their
apartments.

        The contractor on this project was to be paid, in part, periodically from a
line of credit through First Hawaiian Bank secured by the Val Hala Apartments. The line
of credit is such that it can only be used for the Val Hala Apartments. The contractor is
currently owed approximately $60,000 for work already completed and does not want to
complete the job unless he is paid.

        However, the Notice of Pendency of Action ("NOPA") in this case
prevents First Hawaiian Bank from perfecting its lien on the Val Hala Apartments for any
new monies issued for the repairs in progress. Hence, First Hawaiian Bank refuses to
release the monies which would be used to pay the contractor. Consequently, the
contractor is threatening to leave the project and removing the scaffolding. The delay
and shutdown of the project will only increase the overall costs to repeat previous work
done, harm the value of the Val Hala Apartments, and further inconvenience the tenants.
This action is uncalled for under the circumstances as your claims have no factual basis
other than supposition.

EXHIBIT  D

Letter to S. Egesdal, Esq.
5/5/2006
Page 2 of 2

Moreover, we do not believe you have a good faith basis for the NOPA. Well-settled Hawaii law does not allow Unity House to impose a constructive trust on the Val Hala Apartments under the facts you alleged. At best, Unity House would have a claim for an equitable lien which is insufficient for a NOPA. Further, there was no property or funds whatsoever transferred from Unity House to our clients. The Community Development Block Grant ("CDBG") funds belonged to the City and County of Honolulu, not Unity House. As such, our clients could not have been unjustly enriched and a constructive trust also would not be allowed. In essence you are slandering the title to the property and clouding the title to the property which is causing our client damages on a daily basis.

Therefore, we demand that you agree to some provision whereby First Hawaiian Bank can perfect its lien on the Val Hala Apartments and release the monies for the contractor. Unity House will not be prejudiced as it is claiming ownership of the Val Hala Apartments. The project is necessary and must be completed with all reasonable speed. We note that First Hawaiian Bank required three bids and an independent evaluator to assess the work as a condition of the line of credit. We can provide further information if you have any concerns. We would hope that we could at least start a dialogue as to this issue so as not to harm the tenants of the Val Hala Apartments, a dangerous situation is not created, and overall costs are not increased.

Nothing contained herein should be construed as an admission, waiver or prejudice the interest of our client to litigate any issue in the future, rather the foregoing is submitted pursuant to Rule 408 of the Hawaii and Federal Rules of Evidence.

Very truly yours,

KIDANI LAW CENTER

Grant K. Kidani

cc:     Client via email



U.S. Department Housing and Urban Development

Honolulu Field Office – Region IX
500 Ala Moana Boulevard, Suite 3A
Honolulu, Hawaii 96813
http://www.hud.gov
http://www.espanol.hud.gov

APRIL        2 0 2006

Mr. Rudy L. K. Tam
Managing Director
Investment Group, LLC
233 Merchant St. Suite 400
Honolulu, HI 96813

Dear Mr. Tam:

SUBJECT:  Unity House, Inc. and Val Halla Apartments

This letter is in response to your letter dated April 9, 2006 requesting clarification of my understanding of the settlement between Unity House, Inc., City and County of Honolulu (City), and Investment Group, LLC. Specifically, you were interested in my understanding of the events that lead to Investment Group's use of Community Development Block Grant (CDBG) Program Income, held by Unity House, to acquire the Val Halla Apartments.

In responding to your request, I must first remind you that the CDBG funds involved in the settlement agreement and the Val Halla Apartments acquisition was generated as a result of the City and Unity House's involvement in the CDBG assisted Lokahi Green's Project in Historic Ewa Villages. More specifically, as a result of the sale of property at Lokahi Green's, $1.1 million in CDBG Program Income was generated and retained by Unity House.

The Department of Housing and Urban Development (HUD) noted in its Program Year 2000 monitoring of the City's CDBG Program that Unity House had not returned $1.1 in CDBG Program Income to the City as required by the Lokahi Greens Project subrecipient agreement between the City and Unity House. As a result, HUD instructed the City to collect the funds or reimburse the CDBG program. After HUD notified the City of the CDBG Program Income issue, the City and Unity House met in a meeting arranged by HUD to discuss the issue.

The initial meeting between the City, Unity House, and HUD did not result in any specific agreement. However, the meeting lead to a number of follow-up meetings in which Mr. Anthony Rutledge, President Unity House, Mr. Randall Harakal, Executive Director/General Counsel Unity House, Mr. Ivan Lui-Kwan, Director Budget and Fiscal Service City and County of Honolulu, you and I attended.

During the follow-up meetings, Mr. Rutledge was very clear that Unity House wanted to settle the CDBG issue and a pending law suit between the City and Unity House at the same time. He further indicated, after discussing possible CDBG projects that Unity House was not willing to obligate itself to comply with any further CDBG rules and regulations. As a result,

EXHIBIT E

Mr. Lui-Kwan suggested that Unity House allow Investment Group to use the CDBG funds if Investment Group was willing to comply with the CDBG regulations or Unity House would have to return the funds to the City and County of Honolulu.

As a result, Unity House elected and the City agreed to allow Investment Group to use the City's CDBG funds, being held by Unity House, for the acquisition of the Val Halla Apartments. Investment Group agreed to comply with the CDBG regulations by designating rental units in the Val Halla Apartments for low-income households, agreeing to HUD's affordability period restrictions and rehabilitating the apartments.

In exchange for Unity House's agreement to resolve the CDBG issues, the City agreed to settle its pending law suit against Unity House as required by Unity House as part of the resolution of the CDBG issue and HUD monitoring findings, bringing to closure the differences between the City and Unity House while assisting low-income families.

In closing, should you have any questions concerning my comments please call me at 808-522-8180, extension 264.

Sincerely,

Mark A. Chandler, Director
Office of Community Planning
    and Development

# KIDANI LAW CENTER

Attorneys at Law · A Law Corporation                                                    Honolulu

May 24, 2006

*Via Fax 523-0842 & Hand Delivery*
Unity House Receivership
c/o Steven Egesdal, Esq.
Carlsmith Ball LLP
ASB Tower, Ste. 2200
1001 Bishop St.
Honolulu, HI 96813

<div style="margin-left:2em">

Re:    Unity House Inc. v. Rudy Tam, et. al.
       Civil No. :    05-1-2218-12 (BIA)
       <u>Our File:    2005210</u>

</div>

Gentlemen:

       There has been a sufficient amount of time from the filing of our recent pleadings for you and your client to reevaluate the allegations contained in your First Amended Complaint. As you know, our motions reveal severe defects in the theory of the case by Plaintiff Unity House, Inc. ("Plaintiff") and/or the Receiver and its attorneys who have engaged in this litigation in bad faith.

       The most glaring defect is your client's change in position in which Plaintiff now implies that it had been merely holding $1.1 million in CDBG funds until it could use it for itself. It is public record which you are going to be held to that Unity House hotly disputed that this $1.1 million was CDBG funds at all since in the First Amended Complaint in which you noted the lawsuit by the City and County of Honolulu ("City") against Plaintiff filed on November 29, 2000.

       The issue of this $1.1 million and who owned it was central to the City's lawsuit that was compromised by the City and Unity House. The City was adamant that the $1.1 million was CDBG funds and Plaintiff claimed the $1.1 million was owned by it unrestricted. As such, Plaintiff is not acting in good faith in the current lawsuit. Plaintiff is relitigating res judicata issues as to the same $1.1 million it earlier settled with the City and Defendant Investment Group and in essence ignoring that settlement. Plaintiff agreed to do what it did with respect to that $1.1 million and it cannot change the terms of the deal now which has long since consummated.

       In light of these inadequacies to support a viable claim, we encourage you to discuss with Plaintiff a method to end this litigation immediately without further exposure to Plaintiff. As such, please consider this our Rule 68 Offer of Settlement for one hundred dollars ($100.00) in full and final settlement of all claims by Plaintiff, including but not limited to claims for attorneys' fees and costs in this action, and that the

**EXHIBIT F**

Letter to S. Egesdal, Esq.
5/24/2006
Page 2 of 2

case be dismissed with prejudice. This low settlement offer reflects our belief that Plaintiff's case is without merit. We note that the Intermediate Court of Appeals has recently held that Rule 68 costs are allowed to a prevailing defendant even where the plaintiff has made no recovery. Kikuchi v. Brown, 110 Haw 204 (Ct. App. 2006).

We remind you that you had a duty under Rule 11 to make a reasonable inquiry as to the facts of the case before filing the First Amended Complaint. Some of the facts readily available to you before filing have since been memorialized in various letters obtained by our clients. We attached to our motion to determine the real party in interest the letter dated April 20, 2006, from Mark A. Chandler, Director Office of Community Planning and Development at the U.S. Department of Housing and Urban Development to Rudy Tam which should alleviate any doubts that Plaintiff was not interested in complying with the CDBG rules and regulations at the time of its settlement with the City and Defendant Investment Group. Furthermore, we attach the letter of Ivan M. Lui-Kwan dated May 16, 2006 which clarifies that Rudy Tam was not acting on behalf of Plaintiff when he approached the City as a private developer. We also expect that the Directors of Unity House will tell the truth and confirm these facts which you should have determined before defaming our client. If all true, then we believer that our client will have a very substantial case for the damages incurred, which continues.

Currently, we have motions to dismiss the First Amended Complaint, to expunge Plaintiff's Lis Pendens, and to determine the Real Party in Interest pending before the Honorable Bert I. Ayabe. Even if this case proceeds past this initial stage, this does not relieve you or your client of Rule 11 liability. We also give notice to you of our intent to file a Rule 11 Motion to prevent Plaintiff from attempting to relitigate issues as to this $1.1 million if the case should survive and we intend to recover all of our attorney's fees and costs that is dramatically increasing.

Nothing contained herein should be construed as an admission, waiver or prejudice the interest of our client to litigate any issue in the future, rather the foregoing is submitted pursuant to Rule 408 of the Hawaii and Federal Rules of Evidence. This Offer shall automatically terminate and/or be revoked ten days from the date hereof.

Very truly yours,

KIDANI LAW CENTER

Grant K. Kidani

ENC:    letter dated May 16, 2006 from Ivan M. Lui-Kwan

cc:    Client via email

# KIDANI LAW CENTER

Attorneys at Law ◆ A Law Corporation                                                                                    Honolulu

June 19, 2006

Carrie K. S. Okinaga, Esq.
Corporation Counsel
530 S. King Street
Honolulu, HI 96813

Re:    City and County of Honolulu v. Unity House, Incorporated
       Civil No. :    00-1-3637-11
       Our File:      2003157

Re:    Unity House, Incorporated v. Rudy L. K. Tam and Investment
       Group, LLC
       Civil No. :    05-1-2218-12 (BIA)
       Our File:      2005210

Dear Ms. Okinaga:

        We hereby demand that the City and County of Honolulu ("City")
indemnify, defend and hold harmless, our clients, Investment Group, LLC ("Investment
Group") and its employee Rudy Tam ("Mr. Tam") in the recent lawsuit filed by Unity
House, Incorporated ("Unity House"). We make this demand based on the Settlement
and Release Agreement executed on October 24, 2003 amongst City, Unity House and
Investment Group ("Settlement Agreement") in City and County of Honolulu v. Unity
House, Incorporated, Civil No. 00-1-3637-11 ("Old Lawsuit"). A copy of the Settlement
Agreement is enclosed for your reference.

        The Old Lawsuit settled, inter alia, the City's claims against Unity House
for the return of approximately $1.1 million of the City's Community Development
Block Grant ("CDBG") funds. See, p. 3 of Settlement Agreement. Unity House had
withheld the CDBG funds despite repeated demands by the City. The Settlement
Agreement required Unity House to return the CDBG funds to the City "by transferring
the Program Income to Group which in turn shall purchase and acquire" the Val Hala
Apartments. See, pp. 5-6 of Settlement Agreement.

        On December 15, 2005, Unity House, in Receivership, filed a new lawsuit
entitled Unity House, Incorporated v. Rudy L. K. Tam et. al., Civil No. 05-1-2218-12
(BIA) ("New Lawsuit") which was subsequently amended on January 6, 2006. Unity



EXHIBIT ___G___

Letter to Carrie K. S. Okinaga, Esq.
Corporation Counsel
6/19/2006
Page 2 of 3

House, through its Receiver, is attempting, *inter alia*, to renege on the Settlement Agreement and void its previous return of the approximately $1.1 million in the CDBG funds to the City through Investment Group. A copy of the Receiver's First Amended Complaint is enclosed for your review.

The Receiver is now claiming that Unity House was entitled to possess and control the CDBG funds (contrary to the Settlement Agreement) and thus the transfer to Investment Group was a breach of the fiduciary duties of Mr. Tam and a usurpation of a corporate opportunity. The Receiver is seeking to divest from Investment Group and Mr. Tam; and transfer to Unity House; any ownership rights in the Val Hala Apartments or profits therefrom. This is despite the covenant not to sue contained in the Settlement Agreement among other things. The Receiver has also made misleading statements in its reports to the Federal Court by claiming Unity House "gave up a major real estate opportunity" (obviously referencing the Val Hala Apartments) without disclosing that it was part of the overall Settlement Agreement and the significant liability Unity House had in the Old Lawsuit which was settled.

The New Lawsuit has created additional burdens to the management of the Val Hala Apartments through the Receiver's filing of a lis pendens on the property. Necessary funds for improvements to the Val Hala Apartments are being withheld due to the threat on the security, i.e. the Val Hala Apartments. We have attempted to amicably settle these issues, but the Receiver has continuously represented that Unity House had every right to the CDBG funds and it was improper for Unity House to transfer those CDBG funds to Investment Group. The Receiver will not voluntarily withdraw the lis pendens on the Val Hala Apartments even to have necessary repairs made to the property.

Consequently, we are left with no choice but to demand, pursuant to the Settlement Agreement, that the City indemnify, defend and hold harmless Investment Group and Mr. Tam immediately. The City agreed to "indemnify, defend and hold harmless, and does hereby release, acquit and forever discharge Investment Group LLC, and all of its… officers, directors, principals, agents, employees… from and on account of any and all of the Claims as described in Paragraph 2.a hereinabove where such claims are made by, though or on behalf of the City…". See, pp. 10-11 of Settlement Agreement. Unity House is making its claim against our clients through the City because Unity House is asserting ownership of the City's CDBG funds. So this claim, if any, rightfully belongs to the City.

We also note the "Amendment Agreement Number 1" ("Amendment") to Contract Number F62368, Subrecipient Agreement CDBG Program dated April 30, 1998, dated October 22, 2003 requires the City indemnify our clients. The Amendment states, "Now therefore, it is agreed that the City, Subrecipient and Group hereby

Letter to Carrie K. S. Okinaga, Esq.
Corporation Counsel
6/19/2006
Page 3 of 3

indemnify each other from any liabilities per the Settlement and Release Agreement, and hereby agree to ratify and confirm all terms and conditions of the Subrecipient Agreement not inconsistent with the terms and conditions of this Agreement, provided however, in the event of any conflict between the terms and conditions of this Agreement and of the Subrecipient Agreement, the terms and conditions of this Agreement shall control." See, Amendment enclosed.  The "subrecipient" being Unity House and "Group" being Investment Group.

We have incurred significant legal fees and costs to date and we demand that the City defend, indemnify and hold the Investment Group harmless as agreed in the settlement, for this breach of the Agreements by Unity House.  Your immediate action is requested.

Your immediate review and response is requested.

Very truly yours,

KIDANI LAW CENTER

Grant K. Kidani

ENC:   Settlement and Release Agreement
       First Amended Complaint
       Amendment Agreement Number 1

cc:  Client