FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br>v.<br>AARON A. RUTLEDGE; ANTHONY RUTLEDGE, aka "Tony" Rutledge, Star-Beachboys, Inc.,<br>    *Defendants-Appellants.* | No. 05-10060<br>D.C. No.<br>CR-02-00438-DAE<br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
June 15, 2005—San Francisco, California

Filed February 14, 2006

Before: Mary M. Schroeder, Chief Judge,
William C. Canby, Jr., Circuit Judge, and
Kevin Thomas Duffy* Senior Judge.

Opinion by Judge Canby

---

*The Honorable Kevin Thomas Duffy, Senior Judge for the Southern District of New York, sitting by designation.

## SUMMARY

### Criminal Law and Procedure/Forfeiture

The court of appeals vacated a judgment of the district court. The court held that the assets owned by a nonprofit corporation operating under a state charter did not constitute "proceeds" that were "obtained" by a defendant as a result of his mail and wire fraud crimes, within the meaning of statutes that authorize criminal forfeiture for proceeds of mail and wire fraud.

Appellant Anthony Rutledge, the president and chairman of the board of a large non-profit corporation, Unity House, Inc., was charged in district court in Hawaii with mail and wire fraud, among other crimes, relating to his position with Unity House. The government's theory was that Rutledge, through fraud, gained control over the entire corporation in violation of the rights of its members, and, in his control of Unity House, engaged in self-dealing transactions. The government contended that because Rutledge schemed to gain control of the entire corporation and its assets, those assets were the proceeds of Rutledge's alleged mail and wire fraud and were thus subject to forfeiture under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C). The district court accordingly entered a preliminary injunction freezing the assets of Unity House, which continued to be a nonprofit corporation operating under a state charter, and appointing a receiver to take control of its operations.

Rutledge appealed.

[1] Section 2461(c) authorizes criminal forfeiture in connection with a particular offense whenever (1) civil forfeiture of the property in issue is authorized, and (2) there is no specific statutory provision allowing criminal forfeiture for the charged offense. [2] The most natural meaning of this lan-

guage was that criminal forfeiture is authorized under § 2461(c) when no criminal forfeiture provision applies to the charges made against the particular charged individual. Section 2461(c) authorized criminal forfeiture of proceeds of the mail or wire fraud crimes with which Rutledge was charged.

[3] Section 981(a)(1)(C) allows forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to mail or wire fraud. Section 981(a)(2)(A) defines "proceeds" as property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense. [4] The assets that were seized did not fit the usual description of proceeds, nor were they "obtained" by Rutledge. [5] "Control" is an elastic concept, and the court of appeals declined to accept it as a determinant of the meaning of "proceeds" that were "obtained" by Rutledge. Unity House still existed as a corporation, and there was no justification for disregarding its independent existence in assessing whether all of its assets became "proceeds" that were "obtained" by Rutledge. [6] It had to be concluded that the government failed to sustain its burden of showing probable cause to believe that the assets of Unity House were subject to criminal forfeiture. The preliminary injunction entered by the district court had to be vacated.

## COUNSEL

John D. Cline, Jones Day, San Francisco, California, for the appellant.

Patrick T. Murphy, Assistant United States Attorney, Department of Justice, Washington, D.C., for the appellee.

Keith K. Hiraoka, Roeca, Louie & Hiraoka, Honolulu, Hawaii, for the amicus curiae.

## OPINION

CANBY, Circuit Judge:

Anthony Rutledge, Sr., was indicted for mail and wire fraud, among other crimes. The district court, on motion of the government, issued a preliminary injunction seizing the assets of, and imposing a receivership on a nonprofit corporation Rutledge allegedly controlled, on the ground that the corporation's assets would be subject to criminal forfeiture if Rutledge were convicted. Rutledge appeals the preliminary injunction.

We conclude that the corporation's assets would not be subject to criminal forfeiture if Rutledge were convicted, because those assets do not qualify as "proceeds" that were "obtained" by Rutledge as a result of his crimes, within the meaning of 18 U.S.C. § 981(a)(2)(A). We accordingly vacate the district court's injunction.

## BACKGROUND

Rutledge was the president and chairman of the board of a large non-profit corporation, Unity House, Inc., incorporated under the laws of Hawaii. Unity House was originally funded by members of two labor unions. Over the years, the corporation made various investments that permitted it to continue to offer support services to its members.[1] At the time of the district court's injunction, Unity House had listed assets of approximately $42,000,000. Unity House has board members,

---

[1] The articles of incorporation adopted in 1951 stated the corporation's purpose to be that of assisting "union members . . . or friends of Labor in the State of Hawaii[,] . . . by seeking to enhance the quality and quantity of jobs in the State of Hawaii, . . . by promoting benevolent and fraternal relationships between all members, past members, and friends of Labor[,] . . . by assisting Workers and their families . . . when in trouble and need or in distress, [and] by providing suitable quarters for the meeting, assembling, recreation, and education of the Beneficiaries."

UNITED STATES v. RUTLEDGE　　1661

officers, and a corporate counsel and provides various legitimate services.

A grand jury indicted Rutledge for mail and wire fraud (among other crimes), relating to his position with Unity House. The government's theory, which it supported by declaration in the district court, is that Rutledge, through fraud, gained control over the entire corporation in violation of the rights of its members. The government made a showing that Rutledge, in his control of Unity House, engaged in self-dealing transactions, such as loans by Unity House to corporations in which Rutledge had a stake. For the most part, he did not seek approval of these self-dealing transactions from the board of directors, but instead he "conceal[ed]" material information from the board or "intentionally fail[ed] to disclose" the information.

Central to the government's forfeiture claim were its allegation and supporting declaration that Rutledge schemed to gain control of the entire corporation by eliminating the members' rights in it. He allegedly sent out solicitations for voting proxies to the corporation's 12,000 members. These solicitations, according to the government, contained materially false statements, in order to convince the members to sign over their voting rights. After Rutledge had accumulated nearly 7,000 proxies, the board of directors convened and approved an amendment to the articles of incorporation that changed the corporation from a "member" to a "non-member" corporation. The government asserted that this change allowed Rutledge to control the corporation because it enabled Rutledge to answer only to the board of directors, of which Rutledge was the "controlling" member. The government contended that because Rutledge schemed to gain control of the entire corporation and its assets, those assets are the "proceeds" of Rutledge's alleged mail and wire fraud and are thus subject to forfeiture under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C).

The district court, after an adversary hearing in which the government presented its probable cause evidence, accepted the government's contentions. It concluded that because "Defendants are alleged to have converted Unity House into an 'alter ego' entity, the government has established probable cause to believe that [all the assets of Unity House] will be subject to forfeiture." The district court accordingly entered a preliminary injunction freezing the assets of Unity House and appointing a receiver to take control of its operations.[2] The district court noted that there was an avenue for any innocent parties, such as Unity House's members, who claim a right to the property subject to forfeiture to assert those claims. *See* 21 U.S.C. § 853(n). Rutledge now appeals the interlocutory injunction pursuant to 28 U.S.C. § 1292(a).

## DISCUSSION

1. *Criminal Forfeiture is Authorized for Proceeds of the Alleged Mail and Wire Fraud.*

Rutledge's threshold argument is that criminal forfeiture is not authorized by statute for the mail and wire fraud crimes with which he is charged.[3] Prior to the year 2000, Rutledge clearly would have been correct. The mail and wire fraud statute by itself provides for criminal forfeiture only for mail and wire fraud that affects a financial institution or involves telemarketing. *See* 18 U.S.C. § 982(a)(2)(A), (a)(3)(E) & (F), (a)(8). Rutledge is not accused of committing this type of fraud.

[1] The law of criminal forfeiture was greatly changed,

---

[2]The district court had initially entered an ex parte restraining order freezing Unity House's assets and appointing a receiver. The district court's later order, which is the subject of this appeal, converted the restraining order into a preliminary injunction.

[3]We review de novo the issues of statutory interpretation. *See United States v. Ripinksy*, 20 F.3d 359, 361 (9th Cir. 1994).

however, by one of the provisions of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2461(c). Section 2461(c) increased the government's authority to seek criminal forfeiture by providing:

> If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information.

By authorizing criminal forfeiture when civil forfeiture is available, this provision permits the government to avoid the frequent necessity of parallel civil and criminal proceedings. *See* H.R. Rep. No. 105-358(I), at 62 (1997). For purposes of our analysis, section 2461(c) can be divided into two requirements: criminal forfeiture is authorized in connection with a particular offense whenever (1) civil forfeiture of the property in issue is authorized, and (2) there is "no specific statutory provision" allowing criminal forfeiture for the charged offense.

In this case, both requirements are satisfied. First, civil forfeiture is available for "proceeds" of mail and wire fraud under 18 U.S.C. § 981(a)(1)(C).[4] Rutledge does not dispute this general proposition (although he vigorously denies that Unity House's assets are "proceeds" of his fraud).

---

[4] Section 981(a)(1)(C) provides for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1)." Section 1961(1) includes violations of 18 U.S.C. §§ 1341 and 1343, under which Rutledge has been charged.

[2] Rutledge contends, however, that the second requirement is not met because there is a "specific statutory provision" for criminal forfeiture for mail and wire fraud, even though that specific provision does not encompass his particular mail and wire fraud charges. We conclude, as did the district court, that Rutledge's interpretation of section 2461(c) strains its plain words and is inconsistent with the manifest intent of Congress to eliminate the necessity of parallel civil and criminal proceedings. Section 2461(c) permits criminal forfeiture when civil forfeiture is authorized for violation of a criminal statute and "any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction. . . ." The most natural meaning of this language is that criminal forfeiture is authorized under section 2461(c) when no criminal forfeiture provision applies to the charges made against the particular charged individual. There is no reason why Congress would choose to make criminal forfeiture almost universally available for property subject to civil forfeiture but would exempt proceeds from particular kinds of mail and wire fraud. We accordingly reject Rutledge's contention and agree with the district court that section 2461(c) authorizes criminal forfeiture of proceeds of the mail or wire fraud crimes with which Rutledge is charged.

2. *Unity House's Assets Do Not Qualify as "Proceeds" of Rutledge's Mail or Wire Fraud.*

Although we conclude that the proceeds of mail or wire fraud are subject to criminal forfeiture, we agree with Rutledge that the government has failed to make the requisite showing of probable cause to believe that the assets of Unity House were "proceeds" of Rutledge's alleged mail or wire fraud.[5] 18 U.S.C. § 981(a)(1)(C), (a)(2)(A); *see United States v. Roth*, 912 F.2d 1131, 1134 (9th Cir. 1990) (noting that the

---

[5]We review de novo the district court's probable cause determination. *United States v. Roth*, 912 F.2d 1131, 1134 (9th Cir. 1990).

government must show probable cause that the assets will be subject to forfeiture). The district court accordingly erred in granting the injunction, and we reverse its decree.

[3] Section 981(a)(1)(C) allows forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to" mail or wire fraud. Section 981(a)(2)(A) defines "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."

The government has shown, at most, that Rutledge " 'scheme[d] to gain control of [Unity House] assets for his personal use.' " The government has not, and apparently could not, show that assets as they were acquired and held by Unity House were derived from mail or wire fraud charged in the indictment. The government also did not show that Rutledge deposited any ill-gotten gains in Unity House. Instead, the government takes the position that, because Rutledge was able to exercise "control" over the actions of Unity House's board of directors, or took some actions without notifying the board, all of the assets of Unity House become forfeitable.[6]

[4] The government's position goes well beyond the statutory language, which authorizes forfeiture of "proceeds" that were "obtained" by Rutledge as a consequence of his mail or wire fraud. 18 U.S.C. § 981(a)(1)(C), (a)(2)(A). The assets that have been seized do not fit the usual description of "proceeds," nor have they been "obtained" by Rutledge. All of the assets that have been seized, and remain seized, under the district court's injunction were owned by Unity House, which continued to be a nonprofit corporation operating under a state charter. The bank accounts that were seized were in the name of Unity House. The title to the real property that was

---

[6]We have found no precedent of this court or the courts of appeals of the other circuits addressing this precise theory raised by the government.

seized is in the name of Unity House. Unity House continued to engage in substantial operations not affected by any mail or wire fraud alleged to have been committed by Rutledge.

[5] The government's view is that, because Rutledge acquired effective "control" over the operations of Unity House by fraud, all of its assets became subject to forfeiture as proceeds that he obtained by his fraud. "Control" is an elastic concept, however, and we decline to accept it as a determinant of the meaning of "proceeds" that were "obtained" by Rutledge. *Cf. Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 ("Surely if the rule of lenity . . . means anything, it means that the familiar meaning of the word 'obtain' —to gain possession of—should be preferred to the vague and obscure 'to attain regulation of the fate of.' "). Unity House still exists as a corporation, and we see no justification for disregarding its independent existence in assessing whether all of its assets become "proceeds" that were "obtained" by Rutledge. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 786 (1984) ("The well-settled rule is that a corporation is a separate legal entity.").

It is true that Rutledge's control of Unity House may have enabled him to misappropriate some of its assets,[7] but the government is not pursuing any such assets in Rutledge's hands, where they could qualify as "proceeds" that he "obtained." It is also true that Rutledge may have mismanaged Unity House to its detriment and that of its former members. The remedy for mismanagement, however, does not extend to forfeiting all of the assets of the mismanaged corporation to the United States.[8] State regulation and private suit provide

---

[7] The government's probable cause showing referred to some incidents of improper payment or self-dealing on the part of the Rutledge.

[8] The government asserts that third-party interests, presumably those of the defrauded former members of Unity House, would be protected if all of the assets were ordered forfeited. Those third parties, however, would have to meet the requirements of 21 U.S.C. § 853(n) to establish their superior right to the assets.

more appropriate avenues of relief.[9] *Cf. United States v. Riley*, 78 F.3d 367, 370-72 (8th Cir. 1996) (overturning pre-conviction restraint on entire enterprise through which defendants violated RICO, and observing that RICO prosecutors are not proper persons to run insurance business, the regulation of which "is the prerogative of the States").

[6] We conclude, therefore, that the government has failed to sustain its burden of showing probable cause to believe that the assets of Unity House are subject to criminal forfeiture as "proceeds" that were "obtained" by Rutledge as a result of his mail or wire fraud.

## CONCLUSION

Congress in 28 U.S.C. § 2461(c) has authorized criminal forfeiture for the proceeds of the mail and wire fraud crimes with which Rutledge was charged. The district court erred, however, in holding that there was probable cause to believe that all of the assets of Unity House were subject to forfeiture; those assets in the hands of Unity House did not constitute "proceeds" that were "obtained" by Rutledge as a result of his alleged fraud. *See* 18 U.S.C. § 981(a)(1)(C), (a)(2)(A). We therefore vacate the preliminary injunction of the district court.

Our disposition of this appeal makes it unnecessary for us to consider Rutledge's additional contention that section 2461(c) does not authorize pre-conviction seizure of assets. *See United States v. Razmilovic*, 419 F.3d 134, 138 (2d Cir. 2005) (holding that section 2461(c) does not authorize pretrial restraint of forfeitable assets).

---

[9]Rutledge is unlikely to commit any further acts of mismanagement of Unity House during the pendency of his criminal proceedings. The district court as a condition of his pretrial release required that he or his agents have nothing to do with the affairs of Unity House.

1668   UNITED STATES v. RUTLEDGE

The preliminary injunction entered by the district court is **VACATED.**